38 C.C.P.A.(Patents)

## DURDIN v. NORDELL.

### No. 5809.

United States Court of Customs and Patent Appeals.

June 26, 1951.

Frank D. Prager, Chicago, Ill., for appellant.

Brown, Jackson, Boettcher & Dienner, Chicago, Ill. (Arthur H. Boettcher, Chicago, Ill., of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This case is before us on an appeal from a decision of the Board of Interference Examiners holding that the counts in issue are readable on the original disclosure of the appellee and awarding priority of invention to him.

On November 28, 1947, appellee Nordell filed an application for reissue of Patent No. 2,418,189, "Traction Drive for Liquid Treating Apparatus," issued April 1, 1947, and applied for August 23, 1941. The disclosure of the Nordell reissue application is identical with that of the original patent and the claims differ only in that two have been added which were copied from the Durdin patent. The Primary Examiner rejected those two claims on the ground that they were not supported by the disclosure, Nordell appealed, and the Board of Appeals in a decision of December 31, 1948, reversed the examiner. On March 22, 1949, an interference was declared between the Nordell reissue application and the Durdin patent.

The party Durdin filed his application, serial No. 507,631, on "Liquid Treatment with Solids Impeller Means Having a Normally Submerged Drive Wheel," on October 25, 1943, and prosecuted it through a final rejection, appeal, and allowance by the Board of Appeals in a decision of July 9, 1947. The application issued as Patent No. 2,427,091 on September 9, 1947, and some ten or twelve weeks later the party Nordell filed his reissue application requesting an interference therewith.

Preliminary statements were filed and when the party Durdin failed to allege a date prior to the filing date of the original Nordell application he was placed under an order to show cause why judgment should not be entered against him. The party Durdin responded by filing a motion to vacate the order and to dissolve the interference on the ground that the party Nordell's original application did not disclose the invention of the counts, and that Nordell was consequently not entitled to the benefit of the filing date of that application and was in fact the junior party.

The decision by the Board of Interference Examiners on final hearing, awarding priority to the party Nordell, is the decision on review.

There is no question as to dates. Nordell is the earlier. The determinative issue is whether the two counts read on Nordell's original disclosure.

The invention of both parties has to do with liquid clarifiers, such as those employed by municipalities and process industries to remove suspended solids from a flow-through of raw water, and particularly to the means for driving scrapers which remove the precipitated solids from the clarifier tank. These scrapers are referred to in the counts as "solids impeller means."

Both apparatuses comprise a large circular tank, to which the raw water is continuously admitted while being kept as quiescent as possible in order that the suspended solids will subside. The clarified liquid overflows a weir into a launder, and thence to an outlet. The settled solids are scraped from the bottom of the tank towards a sludge outlet in the middle of the circular bottom, the latter being coned downwardly from its periphery to such outlet. The scrapers are carried by a radial bridge structure which rotates on a fixed pivot in the center of the tank and extends to the rim of the tank. This bridge structure comprises a bridge over the liquid level and scraper carrying truss arms below the liquid level extending radially in the lower portion of the tank. A power driven unit connected to the end of the bridge rotates the bridge by means of a traction wheel which engages a circular track.

It was old in the art to have the track on the top wall of the tank, although this construction was beset with the various

difficulties caused by accumulations of ice and snow on the traction surface usually resulting in loss of traction. Both parties solved this difficulty by using a circular track under the liquid surface.

The party Durdin supports the outer or rim end of the bridge on wheels carried by the bridge and riding over the top surface of the vertical tank wall. Attached to the rim end of the bridge is a swingable frame pivoted on a horizontal axis which lies above and substantially tangent to the tank wall. This frame, the normal position of which is horizontal, carries a vertically positioned drive motor, a reduction gear, and a drive wheel mounted on a downwardly extending vertical shaft, which is driven by the motor through the reduction gear. The drive wheel is disclosed as being supplied with a resilient tire which tire makes contact with the vertical inner surface of the tank wall. That surface comprises the track or driveway. Since the entire power unit is mounted on the swingable frame, the drive wheel is urged against the tank wall with a constant force and is free to follow the contour of the wall, thus eliminating the necessity for an accurately circular driveway or track. As the tank is always kept full of liquid the driveway and drive wheel are always submerged.

The party Nordell shows several species of his invention, only one of which need be explained in detail. In his first embodiment Nordell provides an annular track or rail mounted on the inner side of the tank wall and disposed a sufficient distance below the surface of the liquid to prevent its being covered by ice. The outer end of the bridge is supported by a carriage whereon is mounted a wheel which rides over the submerged annular track. Also mounted on the carriage are a motor, a reduction gear, and a drive chain, all of which cooperate to rotate the wheel and thereby move the bridge and connected scrapers. If the foregoing arrangement does not provide sufficient tractive force, Nordell provides a second wheel which contacts the under surface of the annular rail and is driven by the motor. The two wheels are mounted in spaced horizontal relationship. Connected to the wheels and carriage is a linkage, not of importance here, which urges the wheels against the track with a force proportionate to the amount of sludge the scrapers are then encountering.

A second embodiment of Nordell's invention utilizes the same submerged annular track but derives its traction from a rack and pinion arrangement, the under side of the track being provided with rack teeth for this purpose.

Still a third embodiment eliminates the annular track mounted on the tank wall and utilizes a drive wheel which rolls along the tank bottom.

The counts of the interference read as follows:

"1. In apparatus for the treatment of liquid with precipitation of solids, a tank having a wall associated therewith, which wall presents a submergible and normally submerged driveway in the tank; liquid inlet and outlet means associated with the tank, whereby a liquid level can be substantially maintained in the tank, above said driveway; a frame structure adapted to be moved along said driveway; means to support said frame structure while allowing it to be moved; solids impeller means in the tank, mounted on said frame structure; a drivewheel mounted on the frame structure and adapted to contact said driveway in a direction normal to said driveway and to the periphery of said drivewheel, with sufficient pressure to provide traction; and motor means mounted on said frame structure to drive said drivewheel and thereby to drive said frame structure and solids impeller means.

"2. Apparatus according to Count 1 wherein said tank is substantially circular, said wall is substantially peripherally located, said liquid outlet means, driveway and drivewheel are located substantially at the top of the tank, and said liquid inlet means is located remotely from said liquid outlet means, whereby said drivewheel is protected from adverse effects of the climate and of the solids precipitated in the tank."

It was agreed in oral argument that if count 1 is readable on the Nordell disclosure in the manner which the Board of

Interference Examiners held it was, then count 2 is also readable and need not be discussed.

The precise question of readability, or as it is sometimes put, ability to make the counts, was decided *ex parte* by the Board of Appeals in the Nordell case and later decided *inter partes* before the Board of Interference Examiners. While the two decisions agree as to the result, they agree on little else, and since the *ex parte* decision was in no way binding in the *inter partes* proceeding, reference thereto would only unduly lengthen this opinion and has been omitted.

It is Durdin's contention that the Nordell disclosure fails to cover the following two limitations in count No. 1:

"A.) * * * a tank *having a wall associated therewith, which wall presents a submergible and normally submerged driveway in the tank*; * * *

"B.) * * * a drivewheel mounted on the frame structure and *adapted to contact said driveway in a direction normal to said driveway and to the periphery of said drivewheel*, with sufficient pressure to provide traction; * * *." [Italics ours.]

Taking these limitations in order, the party Durdin contended that the bottom of the tank is not a wall and that Nordell's third embodiment is thus excluded. The Board of Interference Examiners, hereinafter referred to as the board, held that the word "wall" was ambiguous and that being so it was proper to look to the Durdin patent in which it originated for interpretation. Malm v. Schneider, 10 F.2d 201, 26 C.C.P.A., Patents, 783. They concluded that the Durdin specification clearly referred to the side wall whenever it mentioned "wall," and that this being the case the counts were not readable on the third Nordell embodiment wherein the drive wheel runs along the tank bottom. With this view we concur.

The board was of the further opinion that the word "presents" in the context "the wall presents" connotes a relationship wherein the driveway is a part of the wall itself, and that while a structure in which the wall supports or carries the driveway might be equivalent thereto, the doctrine of equivalents has no application in an interference proceeding. Mitchell v. White, 93 F.2d 216, 25 C.C.P.A., Patents, 788. Since in Nordell's first two embodiments the wall supports or carries the driveway the counts do not read thereon, and so the board concluded. The board went on, however, to point out the following passage in Nordell's specification and found therein a sufficient disclosure to support the counts. We reproduce that passage below:

"* * * In Figure 2 I have shown the track, 30, as mounted away from the wall, 12, of the tank. However, it will be understood that such a track may be embedded in, as well as supported by, *any wall*, including the floor, *or may even be such a wall itself*. It will also be understood that such a track may be suitable for supporting weight or furnishing traction, or both. In this specification, and in the claims which follow, the word "track" is used in its broad sense to include any tank wall or any rail or track mounted thereon. * * *." [Italics ours.]

Since Nordell's disclosure shows no embodiment wherein the driveway or track is vertical, the quoted passage cannot be relied upon to bring such an embodiment within the comprehension of the specification. Nordell does, however, show several species of flat annular driveways mounted on the side wall of the tank, and the quoted matter from the specification seems clearly to teach and cover a structure wherein the drive wheel rides on the top of the upright wall. The party Durdin concedes that the specification suggests driveways of that type, but argues that even if such a structure was disclosed the language of the count, "which wall presents a submergible and normally submerged driveway *in the tank*," clearly distinguishes thereover. It is appellant Durdin's contention that the italicized phrase limits the wall to a "non-horizontal" wall because the top of the vertical wall is not within the tank. We cannot agree.

It seems clear to us that Nordell's specification clearly embraces a driveway on the wall top and that the very fact that the

driveway need be under the liquid surface necessitates a weir edge radially beyond the driveway, as Durdin's Exhibit A pictures, and that the drive wheel and driveway being thus submerged are *a priori* "in the tank."

The party Durdin in argument continually refers to his specification for interpretation of various limitations in the counts while urging their ambiguity. If in fact the counts were as ambiguous as appellant contends, there would be a serious question of validity for lack of compliance with section 4888 of the Revised Statutes, 35 U.S.C.A. § 33. But we do not consider such to be the case. The counts are amply clear and ambiguity only arises when appellant tries to read into the broad language limitations appearing only in the specification. This may not be done. Field v. Stow, 49 F.2d 840, 18 C.C.P.A., Patents, 1437. Limiting language was readily available to appellant at the time the claims were drawn, as his specification indicates, and since he did not choose to utilize such language in the claims he is now in no position to insist that limitations be read into the counts for the purpose of avoiding the issue of priority. In accordance with settled authority the counts should be given the broadest interpretation which they reasonably will support. Field v. Stow, supra; Deibel v. Heise & Schumacher, 46 F.2d 570, 18 C.C.P.A., Patents, 907.

Appellant's second and perhaps major contention is that limitation B above is not readable on the Nordell disclosure. The board found that it was, but appellant Durdin objects that the "adapted to" phrase defines a motion rather than a position or attitude and thus the Nordell structure is excluded. The Durdin drive mechanism including the drive wheel is mounted on the swingable frame so that when the mechanism is moved from the inoperative to the operative position the drive wheel swings through an arc and moves into contact with the driveway. Appellant argues that the "adapted to" phrase limits the structure of the count to such a motion. Since this appears to be the main issue in the case we reproduce again the precise words with further emphasis on those which Durdin contends are critical:

" * * * adapted *to contact* said driveway *in a direction normal* to said driveway and *to the periphery of said drivewheel* * * *."

When these words are viewed in the setting of a driveway, a frame structure to be moved thereover, a motor, and a drive wheel mounted on the frame structure, it does not appear that they are in the least ambiguous. Each word has a commonly understood meaning and the claim structure in which they are cast is not only common but one of the most familiar types. Appellant has chosen to insert his limitation in the form of a functional "adapted to" phrase, hardly to be called rare in claim structure. The preposition "to" thus used has no particular significance whatsoever as indicative that the following verb is one of motion rather than position. The "to" is made absolutely indispensable through choice of the functional rather than the positive method of statement. The actual limiting effect of such a functional phrase has not been raised thus far in the prosecution and we express no opinion thereon, but assume it to be limiting since the result we reach is independent of its limiting effect.

Viewed in context we think it clear that the phrase in question specifies a relationship of parts and not any direction of movement. This view is strengthened by consideration of the entire count which calls for a motor driving a drive wheel which in turn contacts a driveway to propel the frame structure therearound. The picture presented is clear and complete, calling for no excursion into the specification for additional limitations. This concept of constant, firm contact is strengthened by the phrase "with sufficient pressure to cause traction." At no place in this count do we perceive a description or even a suggestion of motion other than that imparted to the frame structure by the drive wheel.

Appellant argues that "the basic context of the phrase 'to contact' * * * is: *'in a direction',*" and that this indicates a movement and not a condition or position.

We cannot agree. Funk and Wagnalls New Standard Dictionary, 1942, gives as a definition of "direction":

"The trend of a line or of a course of motion, as determined by its parallelism or deviation from parallelism with some line assumed as a standard; * * *."

Thus, while the word may be used to indicate motion, it is as frequently used to indicate the relative relationship of two lines or objects. The latter is the more obvious meaning in this case. The wheel contacts the driveway at an inclination (the dictionary indicates this word to be synonymous with direction) normal to the driveway and to the periphery of the wheel. Appellant repeatedly compared the contact of his drive wheel to that of an automobile wheel with the road. We agree with the comparison, and think that the disputed phrase aptly describes such contact, and also think that the contact of Nordell's drive wheels fits equally well the comparison and description. In the context of the count, which refers to the manner in which a drive wheel contacts a driveway with sufficient pressure to provide traction, it is necessary that direction in two dimensions be specified in order to completely define the relationship of the parts. One dimension is satisfied when the plane of the wheel is normal to the driveway and the other is satisfied when the pressure urging the wheel into contact with the driveway is normal to the periphery, i. e., to its tangent at the point of contact. This, we believe, is the relationship clearly brought to mind by the language of the count.

There is no language in the count which calls for any such motion on the part of the drive wheel as appellant would have us interpret this limitation to specify. It might well be that appellant had such a motion limitation in mind when the claim was drafted, but the claim structure chosen is commonplace and the language is clear, and in its clear meaning it does not recite a motion limitation. It is axiomatic that interference counts are to be given the broadest construction that their language will reasonably support, and limitations are not to be read into them to meet the exigencies of a particular situation. Sweetland v. Cole, 53 F.2d 709, 19 C.C.P.A., Patents, 751; Martin v. Friendly, 58 F.2d 421, 19 C.C.P.A., Patents, 1181. The disputed limitation in its clear and broadest sense is fully readable on Nordell's disclosure.

Appellant urges upon us consideration of a British patent which he himself cited in the *ex parte* prosecution of his case. This patent, it is contended, should be looked to to clarify the ambiguities in the count, since, appellant further contends, Nordell's disclosure is anticipated by the patent if broad enough to cover the counts. It is true that where the language of a count is ambiguous, construction of the count so as to make it patentable over patents cited in *ex parte* consideration is permissible, Holdsworth v. Goldsmith, 129 F.2d 571, 29 C.C.P.A., Patents, 1047, but it is also true that the plain meaning of an unambiguous count may not be distorted for the purpose of avoiding either the prior art or a priority contest. Holdsworth v. Goldsmith, supra; Deibel v. Heise & Schumacher, supra, and cases cited therein. The question of patentability will not be considered by this court in an interference proceeding. Normann v. Schmidt, 125 F.2d 162, 29 C.C.P.A., Patents, 822; Chamberlain v. Kleist, 112 F.2d 846, 27 C.C.P.A., Patents, 1300, and cases cited therein. The only ambiguity which we have been able to detect in the counts in issue related to the meaning of the word "wall." Following well settled procedure, Robie v. Netherly, 172 F.2d 557, 36 C.C.P.A., Patents, 805; Robie v. Carlton, 171 F.2d 310, 36 C.C.P.A., Patents, 739, we have looked to appellant's specification for further definition and found the ambiguity removed by the usage there. We see no need to refer to the British patent.

For the reasons hereinbefore set forth we are of the opinion that the Nordell disclosure supports the counts before us. The decision of the Board of Interference Examiners is affirmed.

Affirmed.