Thomas A. STANSBURY, Appellant,

v.

Donald S. BOND, Appellee.

Patent Appeal No. 8902.

United States Court of Customs and Patent Appeals.

Aug. 16, 1973.

Penrose Lucas Albright, Arlington, Va., Thomas A. Stansbury, Chicago, Ill., attorneys of record, for appellant.

George J. Seligsohn, Princeton, N. J., attorney of record, for appellee; J. L. Whittaker, A. Russinoff, Princeton, N. J., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

RICH, Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of invention to the senior party, Bond,[1] on two grounds: (1) that the junior party Stansbury,[2] had shown neither an actual reduction to practice of the invention prior to the date Bond *constructively reduced the invention to practice* by filing his patent application nor shown reasonable diligence from a time prior to conception of the invention by Bond, under 35 U.S.C. § 102(g); and (2) the ancillary ground that the disclosure of the invention in the Bond application supports the language of the counts. We affirm.

### The Contested Subject Matter

The invention of the counts relates to what the board termed "systems for apprising airplane pilots as to whether or not they are on a hazardous course."

The counts, which correspond to claims 63 and 58 of the Stansbury patent, are as follows (emphasis ours):

1. A *computer* comprising: means for determining whether the distance of a first craft from a second craft is within a preselected range by comparing the elapsed time between a signal transmitted by the second craft and a signal received from said first craft in response to said second craft signal, and *means for indicating that said first craft is a navigational hazard to said second craft* connected to said distance determining means for actuation when the distance of said

---

1. Donald S. Bond, involved on application serial No. 663,778, filed June 5, 1957, assigned to RCA Corporation.

2. Thomas A. Stansbury, involved on patent No. 3,310,806, issued March 21, 1967, on application serial No. 448,554, filed April 1, 1965, as a continuation of application serial No. 272,396, filed April 11, 1963.

first craft from said second craft is within the preselected range, *said means requiring no other input than an input signal from said distance determining means.*

2. A *computer* comprising: means for determining whether an altitude of a first craft is within a preselected range of the altitude of a second craft, means for determining whether the distance of said first craft from said second craft is within a preselected range, *means for indicating that said first craft is a navigational hazard to said second craft* connected to said altitude determining means and to said distance determining means for actuation when the altitude of said first craft is within the preselected range of the second craft altitude and the distance of said first craft from the second craft is within the preselected range.

By way of background, the Stansbury patent explains:

There are five parameters which may be utilized in determining a collision hazard. They are the relative altitudes of two aircraft, their relative courses or headings, their relative velocities, the range between them, and the bearing of one aircraft from the other. All the systems that have been proposed in the past require the utilization of a particular set of parameters selected from these five parameters to determine whether two aircraft are a collision hazard to each other. Under prior systems, every aircraft operating in the system which was expected to have the capability of avoiding another aircraft would carry equipment which required the use of each and every parameter in the preselected set of parameters to determine whether a possible collision hazard existed. * * * The present invention, on the other hand, provides for the availability of all five parameters, but makes it possible for the equipment in any given aircraft to be designed to take advantage of only so many of the parameters as are re-

quired for that aircraft to obtain sufficient collision warning information. Thus, for the first time, a system is available wherein one aircraft can utilize up to all five parameters in estimating a collision hazard, and, therefore, make only a few deviations from its course to avoid other aircraft, while another aircraft can use only one or two of these parameters to provide it with sufficient collision hazard information to avoid all other aircraft, which it is capable of avoiding by virtue of its performance capability in relationship to the performance of the other aircraft.

The computer to which count 2 is drawn utilizes only two of these parameters, altitude and range, to provide it with sufficient navigational hazard information to avoid other aircraft. Count 1 utilizes only one parameter, distance, to provide it with sufficient navigational hazard information to avoid other aircraft.

## THE ISSUE OF BOND'S RIGHT TO MAKE THE COUNTS

### *Stansbury's Arguments*

Stansbury moved to dissolve the interference on the ground that Bond had no right to make the counts. The motion was denied by the Primary Examiner and renewed at final hearing before the board, where it was again denied.

Stansbury asserts that the Bond application does not show support for the limitations of counts 1 and 2 that there be a "computer * * * means for indicating that said first craft is a navigational hazard to said second craft" and of count 1 of "said means requiring no other input than an input signal from said distance determining means."

Stansbury maintains that the counts containing the limitations are "ambiguous," or rather, in his words, "of necessity so worded that reference to the specification of the respective parties becomes necessary to ascertain the meaning of certain language therein." Stansbury quotes the following from

this court's principal opinion in Mc-Cutchen v. Oliver, 367 F.2d 609, 611, 54 C.C.P.A. 756, 759 (1966):

> One cannot arrive at an understanding of the present *counts* as they relate to the subject matter of the interference without something more than the counts themselves.
>
> Admittedly verbal similarities exist between the counts and the respective disclosures of the parties. However, to stop here is to violate the spirit of 35 U.S.C. § 135 which authorizes interferences where two or more parties claim "the same subject matter."
>
> Thus the issue cannot be decided here in the rarified atmosphere of claim semantics. Instead, it must be decided at the down to earth level of what the parties *disclosed* as "the gist" of their respective inventions. Cf. Hansgirg v. Kemmer, 102 F.2d 212, 26 CCPA 937. While an "unambiguous" count may be interpreted without resort to the specification, the counts here are not of this type. *Considering the wording of the counts,* particularly the term "reference" surfaces, *and the arguments of the parties,* it is clear that different meanings are ascribed to that term by the parties when interpreting the count. When resort is had to the specifications, the latent ambiguity in the counts becomes apparent. [Emphasis ours, except "disclosed" in original.]

### As to "Navigational Hazard"

The "gist of the invention," Stansbury maintains, is, as shown by the "navigational hazard" wording which appears in both counts, read in light of his specification, which indicates that the invention is a computer for use in "navigation collision warning system" or what Stansbury calls a Collision Avoidance System (CAS). This he distinguishes from the gist of the Bond invention which he characterizes as an "aircraft proximity indicator and display system" or a "proximity warning indicator which merely warns the pilot of the proximity of a nearby craft without making a deci-

sion for him as to whether the other craft is a navigational hazard." Thus Stansbury's position is that the counts * * * are clearly drawn to a computer which makes the decision of whether one craft is a hazard to the other. Bond's structure cannot do this. Bond's structure can merely display the relative bearing and range information either momentarily or as a continuous line or series of dots so that a human pilot or crew member can watch Bond's display and mentally reach his own decision as to whether another craft is a navigational hazard. Thus, on this ground that the claim is drawn to a computer which makes a decision rather than to a range and bearing indicator similar to that of a radar scope, the petitioner respectfully submits that Bond cannot make the original count of the interference.

That the gist of his invention is a collision avoidance system which determines for the pilot whether there is a navigational hazard is apparent, Stansbury maintains, from the prosecution history of claim 24 in his parent application, the predecessor of claim 58 of his patent, which count 2 duplicates. As Stansbury states in his brief:

> During the prosecution of the patent application, the Examiner rejected the original filed claim 24 on Hovannesian et al. 3,089,139 * * *. [Issued May 7, 1963, on application filed May 1, 1958.] However, the applicant stated in his Amendment "A" * * * as follows:
>
> > "Claims 5, 11, 17, 24 and 25 were rejected as being obviously fully met by Hovannesian et al. Hovannesian .discloses a *'proximity warning system'* which transmits altitude information and obtains a rough relative bearing on a transmitted signal from another craft. A collision avoidance system as specified in claims 5, 11, 17, 24 and 25 includes not only means for transmitting altitude data and means for obtaining relative bearing data in order to display such

quantities of information individually as indicated in Hovannesian et al. Figure 3, but it also includes *computing means for determining whether a navigational hazard exists.* Since claims 5, 11, and 17 are drawn to 'collision avoidance systems' which include computer means, and since claims 24 and 25 are drawn to computers, it is submitted that these claims are clearly patentably distinguishable over Hovannesian et al. because no computer means of any type is disclosed therein." [Emphasis supplied by Stansbury.]

The applicant further stated in his Amendment "C" * *ʰ * [after the examiner had again rejected the claims on Hovannesian et al. and stated that "no computer is positively claimed in any of the claims"] that:

"In regard to claims 24 and 25, the Examiner's attention is respectfully invited to the preamble of these claims which is, 'A computer comprising'. Therefore, these claims are drawn to combinations which in themselves form computers."

The file histories of the parent and continuation application Serial No. 448,554, filed April 1, 1956, show that the original claim 24 was then allowed without further rejection by the Examiner * * *.

Stansbury's legal basis for resort to the prosecution history of his patent, to interpret the counts and decide whether Bond has a right to make them, is this further language in McCutchen v. Oliver, supra, 367 F.2d at 616, 54 CCPA at 765:

The Patent Office removed the rejection based on prior art references and the claims, *in view of McCutchen's arguments,* were allowed. Such arguments relied on by the applicant and accepted by the Patent Office to avoid *prior art* references should be considered in interpreting the claims. Considering the respective inventions and the McCutchen specification and file wrapper, we think the McCutchen co-planar "reference surfaces" are exposed. Oliver does not disclose such "reference surfaces." Since we find this to be a necessary feature of the invention as defined by the counts, the decision of the board is *reversed.*

"Means Requiring No Other Input"

Stansbury makes a similar argument with respect to the limitation appearing in count 1 of "said [indicating] means requiring no other input than an input signal from said distance determining means." He alleges that Bond does not support this limitation of the count, a limitation whose terms contain a latent ambiguity "which becomes apparent by resorting to the Stansbury application," the file history of which shows that the limitation was placed in the predecessor claim to claim 63 of the Stansbury patent from which the count was copied, to distinguish, among other things, a Lakatos et al. patent reference (No. 3,-045,231, issued July 17, 1962, on an application filed April 17, 1958) which "disclosed a computer which utilized both velocity and range information in making a determination." Stansbury's brief states:

Therefore, the file history is quite clear on the point that there must be no other information input other than that of range. * * *

*        *        *        *        *        *

The party Bond has admitted that altitude and direction information are carried with the range information in his computer structure which he relies on in attempting to make the count. The limitation in the claim that there be no other information introduced other than range information is most material to the patentability of the claim. If it were not, it would be unpatentable over Lakatos et al. and other references which the Examiner could have additionally cited for rejection.

*The Board's Decision and Bond's Position*

The board determined that the Bond application supported the counts, making first the following general remarks about the arguments of Stansbury interpreting the counts in view of the prosecution history of the claims of his parent application which comprise the counts:

Stansbury presents various arguments as to why the Examiner allowed the claims corresponding to the counts in order to show that Bond has no right to make the counts. Such arguments are irrelevant because they are in fact directed to the patentability of the counts; a question which is not ancillary to priority. Ferree v. Shepard, [Shephard] Jr., et al., 155 USPQ 464, 55 CCPA 848 [384 F.2d 1019]. Since Stansbury did not choose to select limiting language which was available to him when he drew the claims (counts) he is not now in a position to insist that limitations be read into the counts for the purpose of avoiding the issue of priority. Durdin III v. Nordell, 90 USPQ 228, 1951 C.D. 506, [190 F.2d 211, 38 CCPA 1187]; Dawson v. Martin, 1940 C.D. 493.

Then the board pointed out why it believed the counts, interpreted without regard to the "irrelevant" arguments of Stansbury based upon the reasons the examiner allowed the claims corresponding to the counts, were supported by Fig. 18 of the Bond application, which we reproduce here:

[A 7732]

The board stated:

As to count 1 Stansbury further asserts that Bond cannot make the clause—"said means *requiring no other input than* an input signal from said distance determining means." He states that this clause means that the input signal cannot contain any-

thing but range information and that Bond has additional information in his input signal.

Bonds [sic] argues conversely that the language is not exclusionary but simply means that it is sufficient for the operation that the input signal from the distance determining means contain range information and does not require absence from the input signal of all information other than range information. We are constrained to agree with Bond's position.

In Fig. 18 of Bond, the signal which is applied to the alarm is the output of the range gate amplifier 296. No matter what other information is present it is obvious that the alarm will be operated by a prescribed range signal particularly when switch 310 is turned to complete the connection through contact 320.

In a decision on a request for reconsideration, the board made it clear that it considered the counts to be "unambiguous and broad enough to be applicable to Bond's disclosure."

Bond agrees with the board that the counts are unambiguous and thus answers Stansbury's argument based upon the "gist" of the Stansbury invention with the assertion following from this court's opinion in Hemstreet v. Rohland, 433 F.2d 1403, 58 CCPA 743 (1970), that it is not necessary to consider the gist of the invention because there is no ambiguity of the counts and therefore there is no reason to resort to the prosecution history of the Stansbury parent to construe the counts.

## OPINION

■■■ We state at the outset what we think must be the answer to the dilemma which faces the court where it is alleged that the language of a count contains a latent ambiguity. If the ambiguity is apparent from the language of the count, like a claim which is "indefinite," then it is easy to see that the count is ambiguous, and resort to the specification is clearly permitted to determine the proper construction of the count. Where, however, a latent ambiguity is alleged to exist, a *literal* application of the rule that "only in the case where a count is ambiguous should resort be had to the patent where it originated" prevents the court from looking to the specification even to determine if there is an ambiguity, let alone resolve the meaning of the count for purposes of the interference. We believe, therefore, that the starting point for determining whether the specification of the patent ought to be consulted to determine the gist of the invention there described may be either an apparent ambiguity in the language of a count or the arguments of one or more of the parties which make it clear that the language of the count may have different meanings. See Smith v. Wehn, 318 F.2d 325, 50 CCPA 1544 (1963); Munch v. Peterson, 420 F.2d 758, 57 CCPA 877 (1970).

■■■ In the emphasized language of Stansbury's quotation from McCutchen v. Oliver, it is clear that the court must consider both the "wording of counts" and the "arguments of the parties" to determine whether different meanings are ascribed to the language of the count. In Kilby v. Nelson, 418 F.2d 937, 57 CCPA 770 (1969), we considered the question of support for the language of the counts in the same context as here. The count used the word "contact." We said, 418 F.2d at 941, 57 CCPA at 775

* * * the fact that Kilby urges that different interpretations of "contact" are applicable may properly be treated as justifying analysis from the viewpoint that ambiguity is involved. See Smith v. Wehn, 318 F.2d 325, 50 CCPA 1544 (1963). Therefore, interpretation of the counts in the light of the Nelson patent in which they originated is appropriate.

We would add to this the requirement that the different interpretations urged to support the contention of ambiguity be reasonable and certainly not clearly contradictory to the language of the count.

### As to "Means Requiring No Other Input"

The limitation of count 1 which resides in the clause "said [indicating] means requiring no other input signal from said distance determining means" is urged by Stansbury to mean "there must be no other information input other than that of range." Bond's position is as he states in his brief, reviewing the arguments made before the board:

Stansbury's position seems to be that this language is exclusionary and would not be supported by a system in which the input signal includes altitude data as well as distance. But the fact is that the phrase simply means that it is *sufficient* for the operation of the computer that the input signal from the distance determining means contain only range information, notwithstanding that the input signal may also contain other (e. g., altitude) information.

Plainly, the language in question does not require the *absence* from the input signal of all information other than range information. It merely makes such other information non-essential to, but permissible in, the operation of the computer defined by the count.

Before the Board, Stansbury went to great lengths, as he does here * * *, to review his file history in an effort to read an exclusionary limitation into count 1. But there is no ambiguity here and no need to resort to the file history to construe the count.

■■ The board agreed with Bond's position, and, as to this limitation, so do we. The recitation in the count of indicating "means *requiring* no other input" (our emphasis) than that from the distance-determining means does not mean that no other input can exist, but only that no other input is *needed*, or required. Stansbury's construction of the language of the count is unreasonable, conflicting with the plain meaning of the words alleged to be ambiguous. In such a case, Stansbury's arguments cannot be accepted as raising an ambiguity justifying a determination of the "gist of the invention" or analysis of the specification or prosecution history of the patent in which the count originated. See Hemstreet v. Rohland, supra; Kademann v. Bollmann, 421 F.2d 1372, 57 CCPA 907 (1970). There being no ambiguity, we agree with the board that this language, given its plain meaning, finds ample support in the Bond application, particularly in Fig. 18 when switch 310 is in the mode completing the circuit with contact 320. Accordingly, Bond supports this limitation of count 1.

### As to "Means for Indicating That Said Craft Is a Navigational Hazard"

■ Stansbury's argument has, we think, raised an ambiguity in the meaning of these words of the count. He has pointed out that there are two reasonable meanings attributable to them, the difference hinging upon whether the computer "makes the decision of whether one craft is a hazard to the other," or merely determines and displays the relative bearing and range information of the craft "so that a human pilot or crew member can watch * * * and mentally reach his own decision as to whether another craft is a navigational hazard." We therefore disagree with the board's determination that the counts are wholly unambiguous and we find it necessary to determine the meaning of the counts from the prosecution history of the Stansbury patent. Cf. Hemstreet v. Rohland, supra.

It appears from Stansbury's patent prosecution history, the pertinent portions of which are quoted earlier in our summary of appellant's argument, that he and the examiner understood the invention to do more than obtain and display data on nearby aircraft and to actually compute whether a navigational hazard in fact exists. This is the import of the prosecution of claim 24, the predecessor to claim 58 from which count 2 originated, when it was rejected over Hovannesian et al.[3]

Now, does the Bond application describe the invention of the counts to give Bond the right to make the counts? We think it does. This is not because Bond's application refers to "collision warning system" for indicating a "collision hazard," but because the Bond application shows a recognition of and disclosure of means for computing and determining when aircraft are on a collision course. In the Bond application we find this discussion of an object of the invention (emphasis supplied):

Another object of this invention is to provide an improved collision warning system which includes means for indicating in one aircraft when other aircraft in the vicinity are at or near the same altitude, and/*or are on a collision heading,* and/or are moving from one altitude layer to another at which there may be a collision hazard.

Bond's application describes a modified form of the invention including (emphasis supplied),

* * * a transponder on all aircraft and an interrogator on fully equipped aircraft. If a transmitting aircraft A is within a given range of a fully

equipped aircraft B, the former's transponder signal passes through a first gated amplifier on aircraft B. If, at the same time, aircraft A is on a *collision course* with aircraft B, the first amplifier output signal passes through a second gated amplifier on aircraft B. The output of the second gated amplifier actuates a load circuit *such as an alarm or indicator.*

This modified system is illustrated in fig. 18, supra, and is described as providing "Automatic means * * * for eliminating from consideration those aircraft not on collision courses." Gated amplifier 296 is controlled by a range gate circuit 298 and the cam arrangement at 300. The specification continues with a description of the operation of the circuitry schematically shown in Fig. 18:

If the return signals are from an aircraft A within the range interval of interest, two pulses appear at lead 302. These are applied to a pulse code selector circuit 303 which is controlled by barometric altimeter 304. The circuit is so arranged that when the aircraft A from which the pulses are received are within a given altitude increment $\pm\Delta H/2$ of aircraft B, plus code selector 303 produces an output pulse 306 which appears at terminal 308. When switch 310 has its arm connected to terminal 308 and a signal appears there, alarm 314 is actuated and the signal is also applied to the control grid 316 of indicator 318. Alternatively, if it is desired to indicate all aircraft within the range gate interval, arm 310 may be connected to terminal 320, thereby by-passing the pulse code selector.

3. Since the Hovannesian et al. patent was filed after the Bond application, it would not have been a reference against Bond's application, so he would not have had to meet the limitation we are talking here. It is not unfair to consider the manner in which Hovannesian et al. was distinguished by Stansbury because we are only considering it in the context of the *ancillary* ground of Bond's right to make the count. The determination on ancillary grounds would not subject Bond to rejection on the ground of interference estoppel, etc. See MPEP, § 1109.02 and Patent Office Rule 257(b).

Indicator 318 is a "direct view type storage tube" and Bond's Fig. 19 shows a typical display associated with the system of Fig. 18:

*Fig. 19.*

[A 7733]

Bond's specification says that in this figure, "the aircraft are shown as spaced dots. Two aircraft are shown, one at 326 and the other at 328. It is apparent that the aircraft at 326 is not a collision threat as it will pass to starboard. However, the aircraft indicated by dots 328 is on a collision course and evasive maneuvers should be taken." The description continues with the following paragraph referring to the Fig. 18 diagram and the display shown in Fig. 19:

The display of Figure 19 indicates all aircraft within a given altitude increment $\Delta H/2$ of aircraft B, regardless of whether or not they are on collision courses. However, if desired, means may be provided for discriminating against those aircraft such as 326 not on collision courses. Such a unit is shown in Figure 18 by the dashed block 329. It may be a storage device of the type illustrated in [previous figures] * * *. Preferably, the storage unit is arranged to be con-

nected in circuit only when switch 310 is connected to terminal 308. A switch 330 is shown for this purpose. It may be ganged to switch 310 (the ganged connection is not shown on the drawing).

We believe that the Bond disclosure describes the invention of the counts construed in light of the prosecution history of the Stansbury patent. We cannot agree with Stansbury's appraisal that "Bond's structure can merely display the relative bearing and range information either momentarily or as a continuous line or series of dots so that a human pilot or crew member can watch Bond's display and mentally reach his own decision as to whether another craft is a navigational hazard." Clearly the opposite is the import of the description of the circuit of Fig. 18 where gated amplifier 296 (range information controlled) and impulse code selector (altimeter information controlled) control alarm 314 and indicator 318 and where means such as storage unit 329 is provided for discriminating against aircraft not on collision courses.

Stansbury argues to the effect that the Bond disclosure is the same as that of the Hovannesian et al. patent which he distinguished from in the prosecution of the predecessor to claim 58 of his patent by his arguments emphasizing the "computing means for determining whether a navigational hazard exists." Stansbury further speculates that "even if the Bond disclosure had been in the form of a patent that could be cited by the Examiner during the prosecution of the Stansbury applications, the Examiner would have allowed claim 58 over the Bond disclosure." We have considered the Stansbury invention in the context of the prosecution history involving the Hovannesian reference and have considered the teachings of the Bond disclosure to determine if the Bond invention is that of the counts construed in light of this prosecution history, but we will not get involved in directly comparing Bond's disclosure with the Hovannesian

patent[4] or treating the Bond application as a reference against the Stansbury patent.

The decision of the board on Bond's right to make the counts is affirmed.

## THE PRIORITY ISSUE

The board found that the entire record on behalf of Stansbury was substantially as set forth by its summary of the facts, which follows:

Stansbury avers that he conceived the subject matter involved between June 1946 and March 10, 1947 when he filed an application which became patent No. 2,568,568 (Stansbury exhibit 1). He does not, however, indicate where the concept of the counts in issue is to be found in patent 2,568,568 and we have been unable to find it in that patent.

Stansbury further avers that he purchased two APN–1 radar altimeters which were available as surplus "immediately subsequent" to World War II. Photographs of these altimeters are in the record as exhibits 3 and 4. As to these exhibits Stansbury states * *:

"Neither one of these radar altimeters were modified to specifically encompass the subject matter of the two counts of this interference."

Stansbury exhibit 5 is stated to be the first written document which has been preserved. He states that this document was prepared prior to March 1, 1956 * * *. It is not apparent from the record how this date has been established (exhibit 5 is undated and has no designation of authorship).

Stansbury further avers that "* * * models of * * * structures to which the claims of United States Patent 3,310,806 are drawn [were] made * * * between 1947 and * * * April 11, 1963." The record indicates that whatever models had been made were either lost or dismantled * * *. Additionally it is averred that—"Laboratory models

---

4. Hovannesian would not have been a reference against the Bond application. (See footnote 3.)

which simulated the RF transmission portion were completed prior to 1960."

Upon this record the board found, inter alia, that there was "no convincing evidence that an actual reduction to practice including tests showing successful operation of the subject matter of the counts was ever achieved." The board noted that the undated document represented as Exhibit 5 appeared to be merely a theoretical analysis of various possible solutions and it was unable to discern how it supported the conception of the invention of the counts and that Stansbury had "not pointed out how he believes the counts are supported by this document."

Stansbury, apparently submitting the whole issue of priority to the court on the record, says that the points of error by the board are clear from the record. We fail to find them, either in the record summary in the board's opinion or in the record as a whole, including the deposition of Stansbury. Accordingly, the decision of the board awarding priority of invention to Bond is affirmed.

The decision of the board awarding priority of invention to Bond and holding that the Bond application supports the counts is affirmed.

Affirmed.