59 CCPA

**Application of Donald M. FENTON.**
**Patent Appeal No. 8546.**

*United States Court of Customs and Patent Appeals.*

Nov. 11, 1971.

Robert E. Strauss, Brea, Cal., attorney of record, for appellant. Milton W. Lee, Brea, Cal., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–14 in patent application serial No. 373,878, filed June 9, 1964, for processes for the liquid-phase oxidation of hydrocarbon olefins in the presence of rhenium compounds. We affirm.

## The Subject Matter Claimed

Claim 1, which is appellant's broadest claim, reads:

1. An oxidation process which comprises contacting hydrocarbon olefins having 2 to 30 carbon atoms with a rhenium compound selected from the group consisting of rhenium oxide, alkali metal, alkaline earth metal and ammonia perrhenates and mixtures thereof in a liquid reaction medium which is inert under the oxidation conditions, said medium being at a temperature of –50 to 300°C. and at a pressure from 1 to about 250 atmospheres, sufficient to maintain said medium as a liquid.

Independent claims 6, 9, and 12 are similar to claim 1, but claim 6 recites the presence of oxygen in the liquid reaction medium, claim 9 recites the presence of water, and claim 12 recites the presence of both oxygen and water. Claims 2–5, 7–8, 10–11, and 13–14, depending from claims 1, 6, 9, and 12, respectively, place further limitations on the rhenium compound, olefin, and reaction medium used, but neither the recitation of water nor any of the limitations contained in the dependent claims is relied upon for patentability.

Appellant's specification makes clear that it is the rhenium compounds which function as oxidizers of the olefin in the processes which he regards as his invention and that the oxygen which is specifically recited in claims 6–8 and 12–14 is there to regenerate the rhenium compounds, which become reduced as they oxidize the olefins, and not to oxidize the hydrocarbons directly. The claims which recite the presence of oxygen also recite a temperature range "of 125 to 300°C." which the specification says is necessary to facilitate the in situ oxygen regeneration of the rhenium compounds at a suitable rate.

## The Rejection

The examiner rejected claims 1–14 under 35 U.S.C. § 103 as unpatentable over the following references:

| | | |
|---|---|---|
| Gardner | 2,366,725 | Jan. 9, 1945 |
| Gasson et al. | 2,650,927 | Sept. 1, 1953 |
| Baldwin | 2,776,316 | Jan. 1, 1957 |
| Gardner et al. | 2,784,202 | Mar. 5, 1957 |
| Keith et al. | 2,974,161 | Mar. 7, 1961 |

Of these, Baldwin, which teaches a method of *catalyzing the oxygen* oxidation of olefins *in vapor phase* with "an organic compound having a large molecular volume and containing a potentially catalytically active metal," was the principal reference. It states that "those metals which possess at least one differentiating electron in the second from the outermost shell, or penultimate shell," are commonly classified as potentially catalytically active and then lists thirty-three metals, including rhenium, which are within this definition. As appellant points out, "This listing includes approximately one-third of all elements known to mankind * * *."

Keith was relied upon for its very general teaching that unsaturated organic compounds can be oxidized by either catalytic or non-catalytic procedures conducted in either liquid or vapor phase.

Gardner and Gardner et al. teach liquid-phase, oxygen oxidation of olefins in the presence of catalytic metal salts.[1]

Finally, Gasson was relied on as evidence that "metals known to be active in olefin oxidation reactions are conventionally employed as the salt of their acid form," a general proposition which appellant does not contest.[2]

## OPINION

Appellant describes his invention as "the use of certain rhenium compounds * * * as oxidants for hydrocarbon olefins," but all his claims broadly recite "contacting" olefins with rhenium compounds and thus—despite the narrower description of his invention in his specification—they do not exclude processes in which the rhenium compounds function as catalysts rather than as oxidants. Cf. In re Prater, 415 F.2d 1393, 1404, 1405, 56 CCPA 1381, 1396 (1969). Furthermore, we agree with the solicitor that, because they are "comprising" claims rather than "consisting" claims, even those claims which do not recite the presence of oxygen in the reaction medium "are open to the interpretation that oxygen supplied by the atmosphere is the oxidant * * *." In re Cone, 121 F.2d 470, 472, 28 CCPA 1282, 1284 (1941).

As is apparent from the emphasized words in the above synopsis of the principal reference, the method which Baldwin teaches is really not very close to the method described in appellant's specification. Baldwin teaches oxygen oxidation, catalyzed by rhenium; appellant teaches rhenium oxidation, which may be turned into a continuous process by the addition of oxygen under proper conditions which, he contends, oxidizes the primary oxidizer, not the olefin. Furthermore, Baldwin teaches vapor-phase oxidation while appellant teaches liquid-phase. However, it is not the difference between the methods *taught* which controls here but the difference between the method taught by Baldwin and the methods *claimed* by appellant, and that difference is solely the difference between liquid-phase and vapor-phase operation. We agree with the Patent Office that that difference is made prima facie obvious by Keith, Gardner, and Gardner et al.

■ Appellant contends that, contrary to the position taken by the Patent Office, the results obtainable by his process are relevant to the patentability

---

1. Gardner et al. teach such oxidation utilizing, inter alia, manganese salts, and the solicitor argues before us, for the first time in this case, that

   > * ]* * the choice of rhenium oxides as catalysts for liquid phase oxidation would be obvious to the artisan of ordinary skill from Gardner's teachings of manganese salts as catalysts taken with the well-known chemical similarity of rhenium and manganese (see definition of rhenium in Webster's Unabridged Dictionary).

   The solicitor apparently expects us to take judicial notice of this putative similarity and affirm on that basis, but does not say what kind of "similarity" he is referring to. Similarity in what sense, and for what purpose? We decline to act on this inadequate argument. All Webster says is that rhenium "resembles manganese chemically," which is altogether too vague.

2. Appellant does argue that "The secondary references * * * fail to suggest the uniqueness of the oxide or amphoteric form of the metal." However, Baldwin teaches the use of dipyridyl perrhenate as a precursor in his process and states that "The residue remaining after heating [i. e., his catalyst] is believed to be the metal oxide or the pure metal itself, although it is impossible to determine exactly the chemical composition of the residue." Moreover, it is our view that appellant has not proved special results coming from his use of "the oxide or amphoteric form of the metal" sufficient to overcome the Patent Office showing of prima facie obviousness. This conclusion is discussed further in the last portion of this opinion.

 

of his claims despite the fact that they are not recited therein. We agree. In re Estes, 420 F.2d 1397, 1399, 57 CCPA 896, 898–899 (1970). However, appellant's evidence has done little to counteract the force of the Patent Office's prima facie case.

 In the first place, we do not think that appellant has proved that the results of his process are in fact different from the results of the processes taught by Baldwin and Keith. In his specification, appellant first discloses very generally that "The products from this oxidation reaction are epoxides, acids, esters, ketones, aldehydes and ethers," then sets forth sixteen examples in which he obtained specific exemplars of such chemicals, including acrolein, using particular reactants and reaction conditions. Baldwin's specific disclosure uses *copper* phthalocyanine as a precursor, not a rhenium compound, but he asserts that "these catalysts [presumably including the rhenium compounds] may be used for synthesizing the production of benzaldehyde from toluene, phenol from benzene, acrolein from propylene, and methacrolein from isobutylene." [3] Similarly, Keith et al. teach that they have obtained "substantial yields of oxygenated products such as oxides, alcohols, aldehydes, esters, ketones and acids with the exact nature of the products depending upon the severity of the reaction conditions and the feedstock employed." Thus, appellant's results appear to be no more than expected olefin oxidation products.

In the second place, even assuming that the results of appellant's process are specifically different from the results shown by the references, appellant has not shown that any such specific difference is of any practical advantage. The Patent Office has made a strong case based on the breadth of appellant's claims, and we must balance that case against the strength of appellant's objec-

tive evidence of non-obviousness. In this case, we are not persuaded of error. Cf. In re D'Ancicco, 439 F.2d 1244, 1248, 58 CCPA 1057 (1971); and In re Lewis, 443 F.2d 389, 392, 58 CCPA 1270 (1971). Accordingly, we affirm.

Affirmed.

59 CCPA

---

3. Appellant has made no attempt to demonstrate just what reaction products *would* be obtained by following Baldwin's teachings using rhenium compounds as precursors.