Charles H. KROEKEL, Appellant,

v.

Navin SHAH, Appellee.

Patent Appeal No. 76–723.

United States Court of Customs and Patent Appeals.

July 21, 1977.

Michael B. Fein, Philadelphia, Pa., attorney of record, for appellant.

Elton Fisher, Columbia, Md., attorney of record, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

Senior party Kroekel appeals from the decision of the Patent and Trademark Office Board of Patent Interferences (board) in interference No. 98,607 awarding priority of invention to junior party Shah on the ground that Kroekel had no right to make the counts. We reverse.

This interference involves application serial No. 335,999,[1] entitled "Unsaturated Polyester Resins Containing Cellulose Ester and Molded Articles Therefrom," filed February 26, 1973, for reissue of Kroekel U.S. patent No. 3,642,672, which issued from application serial No. 878,920,[2] filed November 21, 1969, which in turn was based upon application serial No. 566,580, filed July 20, 1966, now U.S. patent No. 3,701,748; and Shah U.S. patent No. 3,711,432[3] which issued from application serial No. 120,229, filed March 2, 1971, entitled "Low Shrink

---

1. Assigned to Rohm and Haas Company.

2. A continuation-in-part of application serial No. 566,580.

3. Assigned to W. R. Grace & Co.

Polyester System Formed of a Mixture of Unsaturated Polyester Resin, Monomeric Copolymerizable Component and Cellulose Organic Ester." Kroekel was declared senior party, having been accorded the benefit of the filing date of application serial No. 566,580, filed more than 55 months prior to Shah's application.

### The Subject Matter

Ten phantom counts are involved. The subject matter of the counts comprises (1) a homogeneous polyester resin system, (2) a cured product made from that system, and (3) a method for preparing the resin system. Counts 1, 3, 6, and 7 are illustrative:

1. A homogeneous polyester resin system which comprises per 100 parts by weight about 1 to 25 parts by weight of a cellulose organic ester selected from the group consisting of cellulose propionate, cellulose acetate propionate, and cellulose acetate butyrate; from about 25 to about 75 parts by weight of a monomeric copolymerizable component containing a $CH_2 = C$ group; and from about 20 to about 70 parts by weight of an unsaturated polyester resin component, said unsaturated polyester resin being the condensation product obtained by polycondensation of $a,B$-unsaturated dicarboxylic acid and/or anhydrides together with polyhydric alcohol.

3. The resin system of count 1 having therein an effective amount of a polymerization initiator whereby upon curing of the resinous system, surfaces are characterized as smooth, free of ripple and shrink marks, with excellent adhesion to paints.

6. A cured product cured by exposing the resin system of count 1 to a temperature from about 212 F. to about 350 F. and pressure in the range of from 100 to 1,500 psi.

7. A method for preparation of a homogeneous polyester resin system which comprises mixing together per 100 parts by weight about 1 to about 25 parts by weight of a cellulose organic ester select-ed from the group consisting of cellulose propionate, cellulose acetate butyrate; which is added with agitation to about 25 to about 75 parts by weight of a monomeric copolymerizable component containing a CH-C [sic, $CH_2 = C$] group; occluded in the system, and thereafter, adding from about 20 to about 70 parts by weight of unsaturated polyester resin solutions, the unsaturated polyester resin being the condensation product obtained by polycondensation of $a,B$-unsaturated dicarvoxylic [sic] acid and/or anhydrides together with polyhydric alcohol.

### The Board

The board found the counts ambiguous, and consulted the disclosure of the Shah patent, where the count language originated, to resolve that ambiguity. It said:

When the counts are interpreted in light of the Shah patent, we are left with the definite conviction that the subject matter of the counts deals with polyester resin systems which, when cured, yield a product which is characterized by a homogeneous configuration. * * *

* * * The language "homogeneous" limits the scope of the polyester resin systems of the counts to those resin systems which upon curing must yield homogeneous configurations.

The board found that Kroekel's disclosure was limited to cured products with heterogeneous configurations and, because he had not borne his burden of showing otherwise, that he had no right to make the counts.

### Issue

The sole issue is whether Kroekel has a right to make the counts, the determination of which turns on whether the counts are limited to resin systems which result in products that are homogeneous when cured.[4]

### OPINION

■ Determination of the existence of an ambiguity requires consideration of both

4. We do not reach Kroekel's motion to reopen proceedings for submission of testimony.

the language of counts and the reasonableness of arguments indicating that the language of the counts has different meanings. *Stansbury v. Bond*, 482 F.2d 968, 179 USPQ 88 (CCPA 1973). The board, having concluded that ambiguity is not apparent from the count language, considered the arguments of the parties, which it summarized:

Kroekel maintains that the counts do not cover "cured" products.[5] According to Kroekel, since both parties use the same components to make their respective uncured products, the parties are claiming the same invention, i. e., an uncured product comprising (1) a polyester resin, (2) a polymerizable monomer, and (3) a cellulose ester polymer.

Shah maintains, on the other hand, that his claims, and hence the counts, covers [sic]:
(1) "cured products"—see count 6—and (2) "uncured products" which when cured must yield homogeneous—as opposed to heterogeneous—products.

In his brief here, Shah emphasizes portions of his own and Kroekel's patents:

Shah's Patent No. 3,711,432 clearly states (col. 1, lines 51–54, col. 1, line 61 through col. 2, line 2, and Fig. 2) that Shah's composition when cured exibits [sic] a definite single-phase homogeneous structure. Kroekel's Patent No. 3,642,672 (col. 2, lines 22–29) states that the two polymeric ingredients which comprise his composition may or may not be compatible when dissolved in a liquid monomer and blended, but, on cross-linking under the usual conditions of heat and pressure, an optically heterogeneous product is formed which when examined microscopically exibits [sic] a definite two-phase structure indicative of incompatibility. A similar teaching is found in Kroekel's Patent No. 3,701,748, patented 31 October 1972 (col. 2, lines 25–32) and in his Canadian Patent No. 820,399 which is referred to in Shah's Patent No. 3,711,432 (col. 1, line 56). [Record references omitted.]

The board determined the existence of an ambiguity because it found that the arguments of the parties indicated that the count language has different meanings. The mere fact that the parties take different views, however, is irrelevant. To make plain a latent ambiguity, the parties' arguments must be reasonable. Shah's arguments rest entirely on resort to his disclosure. The error here lay in resort to Shah's disclosure for an interpretation of the count language, and in the utilization of that interpretation as a basis for both finding ambiguity and resolving it. Resort to a disclosure has the limited purpose of resolving an ambiguity—not of creating one. *Fontijn v. Okamoto*, 518 F.2d 610, 186 USPQ 97 (CCPA 1975).

The independent counts are not specifically limited to a system productive of homogeneous products or to a cured homogeneous product per se. Broad language in a count, moreover, is not rendered ambiguous merely by its readability on more than one embodiment. *Fontijn, supra.* It is appropriate, also, in construing independent counts, to consider respective dependent counts. *Eckert v. Williams*, 500 F.2d 1160, 182 USPQ 554 (CCPA 1974). Dependent counts 3 and 6 recite cured products, without reference to whether they are homogeneous. Only the *system* of independent counts 1 and 7 is recited to be homogeneous. No basis exists for applying a limitation ("homogeneous") to the products of counts 3 and 6, when such limitation was not clearly included in counts 3 and 6 and is applied only to the system in counts 1 and 7. To thus narrow the breadth of the counts would be contrary to the rule that limitations not clearly included in a count will not ordinarily be read into it. *Fontijn, supra.*

It is undisputed that Kroekel's disclosure supports counts drawn to a "homogeneous polyester resin system." Because the counts are not ambiguous and because nothing in the counts limited the claimed systems to those productive of homogeneous

---

5. The board's statement is correct that Kroekel's brief before the board so stated. Clearly the brief was in error, since count 6 covers a "cured" product. The error was not repeated in Kroekel's brief before the court.

cured products, we hold that Kroekel has a right to make the counts.

The decision of the board is *reversed.*

*REVERSED.*

BALDWIN and LANE, JJ., dissent.