In re Warren Nesmith BAXTER, Nicholas George Merckling, deceased, by Noelle K. Masukawa, Administratrix, Ivan Maxwell Robinson, and Gelu Stoeff Stamatoff.

Appeal No. 80–574.

United States Court of Customs and Patent Appeals.

July 30, 1981.

Francis A. Paintin, and Hoge T. Sutherland, Arlington, Va., for appellant.

Joseph F. Nakamura, Sol., Fred W. Sherling, Associate Sol., Washington, D. C., for Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER, and NIES, Judges.

MILLER, Judge.

This is an appeal from the decision of the Patent and Trademark Office ("PTO") Board of Appeals ("board") sustaining the examiner's rejections of: claims 1 and 6 under 35 U.S.C. § 103 as obvious from either Hogan et al. ("Hogan"),[1] Field '647,[2] or Field '452;[3] claim 1 under 35 U.S.C. § 132 for containing new matter; and claims 7 and 8 on the ground of interference estoppel. We affirm in part and reverse in part.

## BACKGROUND

### Subject Matter of the Application

The appealed claims relate to interpolymers of ethylene and propylene formed by the use of catalysts formed by mixing certain organometal compounds with certain other metal compounds such as titanium salts. All claims remaining in the application are reproduced below:

1. Normally solid ethylene-propylene interpolymer characterized by consisting essentially of linear macromolecules and in that it is a crystalline thermoplastic, has an inherent viscosity of at least one, as measured in decahydronaphthalene and a methyl content in the range of 0.7 to 3 methyls per 100 carbon atoms, as determined by infrared, said interpolymer being obtained by polymerization of propylene and ethylene in the presence of a catalyst comprising divalent titanium, said catalyst comprising the mixture obtained by reducing a titanium compound having titanium at a valence greater than two with a reducing agent in which there is a hydrocarbon radical directly attached to metal atom.

6. Interpolymers of propylene and ethylene which consist essentially of linear copolymers of propylene and ethylene which are partially crystalline at the X-rays, contain from about 0.7 to 3 methyl groups per 100 carbon atoms in the copolymer molecules as shown by their infrared spectra and have a molecular weight in the range of 50,000–100,000 as determined by inherent viscosity.

7. A process which comprises interpolymerizing monomers comprising ethylene and propylene in the presence of a polymerization catalyst formed by mixing an organometal compound consisting of a metal alkyl or metal aryl of a metal selected from the group consisting of metals of Groups II and III of the Periodic System, zinc metal and metals above zinc in the electromotive series with a compound, other than the oxide, of a metal selected from the group consisting of titanium, zirconium, vanadium, tantalum, chromium, molybdenum, and tungsten, and recovering the solid polymer formed.

8. Process according to Claim 7 in which said organometal compound is an organo-aluminum compound.

### The Prior Art

The board, in its opinion, states:

Hogan is relevant only as to those portions of the disclosure of the patent which are carried forward from its parent application, Serial No. 33,576 [sic 333,576],

---

1. U.S. Patent No. 2,825,721, issued March 4, 1958, on application Serial No. 573,877, filed March 26, 1956, a continuation-in-part of co-pending applications Serial No. 333,576, filed January 27, 1953, and Serial No. 476,306, filed December 20, 1954, both of said applications now abandoned.

2. U.S. Patent No. 2,691,647, issued October 12, 1954.

3. U.S. Patent No. 2,731,452, issued January 17, 1956.

filed January 27, 1953, as recognized by both the Examiner and appellants.[4]

The 1953 application discloses preparation of monoalkylethylene polymer products utilizing certain chromium oxide catalysts to achieve a range of tacky, semi-solid, and solid polymers. Its specification, with 20 working examples, discloses a range of preparations of polymeric materials including polyethylene and polypropylene. In the discussion of unsaturation in polymer samples studied by infrared spectroscopy, it is stated that "[t]he same type of unsaturation is found in all of our polymers including copolymers such as ethylene-propylene copolymer."

Both Field references disclose the production of high molecular weight, normally solid polymers. Field '647 specifically contemplates the copolymerization of ethylene with propylene, the conversion process comprising contacting the olefins with an oxide of chromium, molybdenum, tungsten, or uranium and an alkali metal at certain reaction temperatures. Field '452 employs as a catalyst for copolymerization a modification of that of Field '647, replacing the alkali metal activator with a hydride of certain metals.

4. Appellants do not challenge this conclusion and do not contest reliance on the parent date. Accordingly, we consider the Hogan patent to have the benefit of the 1953 filing date regarding those portions of the disclosure carried forward from the parent 1953 application.

5. Interference No. 90,833 involves the following applications:
 1. Serial No. 710,840 to Natta et al., filed January 24, 1958, which is a division of Serial No. 514,097, filed June 8, 1955.
 2. Serial No. 556,548 to Baxter et al., filed December 30, 1955, which is a continuation in part of Serial No. 517,398, filed June 22, 1955, and Serial No. 451,064, filed August 19, 1954.
 3. Serial No. 527,146 to Bailey et al., filed August 8, 1955.
 4. Serial No. 514,068 to Ziegler et al., filed June 8, 1955.

6. Proposed count A reads as follows:
 A process for polymerizing propylene to a solid linear polymer which process comprises contacting propylene with a catalyst prepared by bringing a titanium halide, in which the valence of the titanium is three to four inclusive, into intimate contact with an organome-

*Procedural History*

Appellants' application Serial No. 708,718, filed January 22, 1968, is a divisional application of Serial No. 556,548, filed December 30, 1955. The latter is involved in Interference No. 90,833 (" '833"), declared January 22, 1960, among appellants Baxter et al. ("Baxter") and three other parties.[5] The civil action that evolved from that interference is pending in the United States District Court for the District of Columbia under an order to stay pending the outcome of Interference No. 89,634 involving the subject matter of crystalline polypropylene as a composition of matter. The appeal from the civil action that evolved from Interference No. 89,634 is pending before the United States Court of Appeals for the Third Circuit.

During the period for motions before the primary examiner in Interference No. 90,-833, Baxter filed a motion to add count A,[6] drawn to a process for polymerizing propylene. After consideration of the motions, the examiner denied Baxter's motion to add count A and on his own motion substituted a new count drawn to a process for homopolymerizing propylene.[7]

tallic reducing agent in which there is a hydrocarbon radical attached directly [sic] a metal atom.

7. The examiner's decision on motions, dated September 20, 1962, in Interference No. 90,833, states:
 The following count constitutes the present issue:
 *Count 1*
 The process for polymerizing propylene to form polymers which are solid at normal temperatures which comprises contacting propylene with a pre-formed catalyst of a chloride of a metal selected from the group consisting of titanium, vanadium, and zirconium in which the metal has a valence higher than 3 and an aluminum alkyl.
 The Examiner by his own motion substitutes the following count (hereinafter called new count).
 The process for homopolymerizing propylene to form polymers that are solid at normal temperatures which comprises (1) forming a catalyst by mixing a halide of a metal selected from the group consisting of titanium, vanadium and zirconium in which the metal has a valence higher than 3 and an

In his request for reconsideration [8] filed October 22, 1962, Baxter, with respect to the new count substituted *sua sponte* by the examiner, stated:

BAXTER's principal concern is that at least one count of this interference be sufficiently broad to permit BAXTER to introduce his best evidence, and secondarily, that the count be sufficiently broad to permit a complete resolution of all the potential issues which can be considered as arising from the disclosures of the parties here involved. In this connection therefore it is respectfully urged that if the Examiner disagrees, on reconsideration, with any of the particulars discussed in the preceding paragraphs relating to the proposed broader BAXTER count and for these reasons feels impelled to deny again the addition of this count to the existing issue, it is respectfully urged that in his discretion he consider the addition of a count sufficiently broadened in comparison to the existing count to permit BAXTER to present his best evidence and secondly to resolve as far as possible all the fundamental issues here involved.

In a reconsideration of decision on motions dated July 15, 1964, the examiner reviewed Baxter's contention that the count should be broadened to include trivalent titanium and organometallic reducing agents (count A) but said—

that at the time the invention was made due to the unpredictability of catalytic

activity trivalent and tetravalent titanium and all of the organometallic reducing agents do not constitute one invention. Since the compounds encompassed by the broadened count do not constitute one invention *all* of the parties must support the count. As noted in the Decision on Motions all of the parties do not support this broadened count.

Just prior to filing his request for reconsideration, Baxter had also filed motions to amend the issue, stating:

In the decision on motions having an effective date of October 5, 1962,[9] the Examiner has, by his own motion, substituted a new count for the sole pre-existing issue of this interference "so as to distinguish over the count of companion interference 90,835." The Examiner has thus found the existing count unpatentable over the count of interference 90,835, dissolved the existing interference, and proposed to declare a new interference, in accordance with Rule 237(a). The present motions to amend the issue are accordingly filed under the provisions of Rule 233(b), second sentence.

In his motions to amend, Baxter offered several counts of varying scope including counts $B_{1-4}$ and counts $C_{1-4}$ drawn to processes for polymerizing propylene to form polymers that are solid at normal temperatures, counts $D_{1-4}$ drawn to homopolymerizing propylene, and counts $E_{1-5}$ [10]

---

aluminum alkyl and (2) only then contacting said catalyst with propylene.

The new count *clarifies the issue* by clearly being limited to homopolymerization and clearly requiring that the catalyst components be mixed in the absence of propylene so as to distinguish over the count of companion interference 90,835. Since the catalyst is in fact a reaction product, the new count clearly includes such a reaction within its scope. Further, in recognition of the known chemical similarity of halides, the count has been broadened in this respect. [Emphasis added.]

8. We have before us, in the addendum to appellants' brief, a single page entitled "Page 11 of Baxter's 'Request for Reconsideration of Decision on Motions Mailed October 5, 1962' filed October 22, 1962 in Interference 90,833."

9. A supplemental decision on motions dated October 5, 1962, reset the time for filing a petition for reconsideration to run from the date of the supplemental decision rather than from September 20, 1962.

10. Baxter filed an amendment concurrently adding claims corresponding to proposed counts E1-5 to his patent application. Count E1 is illustrative:

E1. A process for copolymerizing propylene with ethylene to form linear propylene-ethylene copolymers that are solid at normal temperatures which comprises contacting a tetrahalide of a transition metal selected from the group consisting of titanium, vanadium, and zirconium, with a coordinate number of moles, below 5, per mole of said tetrahalide, of an organometallic reducing agent containing metal directly bonded to monova-

drawn to copolymerizing propylene with ethylene.

With respect to counts $B_{1-4}$, $C_{1-4}$, and $D_{1-4}$ Baxter moved in the alternative to add each count, or to declare a separate interference with each count as the issue, or to declare a separate interference with such of the parties as were deemed to show adequate support for allowability for each count offered. Baxter further moved that, should none of the counts preceding the "D" series (*i. e.*, counts $B_{1-4}$ and $C_{1-4}$ drawn to polymerizing propylene) be deemed proper as an issue among all or some of the parties, a separate interference be declared between Baxter and Ziegler et al.[11] on the basis of one of counts $E_{1-5}$.

These motions to amend were not transmitted to the primary examiner for his consideration. They were considered by the patent interference examiner and dismissed on the ground that they had been made outside the period for motions and were, therefore, untimely. In a letter dated December 3, 1964, the patent interference examiner ruled:

> The dissolution contemplated by Rule 237 is one which terminates the interference. Action by the Primary Examiner refining the issue by substituting a count does not permit the subsequent filing of motions to amend in the same manner that the practice does not permit the filing of motions to amend outside of the motion period subsequent to the bringing of motions to substitute by party opponents. Timely objections to the count proposed by the Examiner should have been made by way of request for reconsideration. To the extent that such requests were made, they have already been determined on the record.

On request for reconsideration, in a letter from the patent interference examiner dated January 8, 1965, it was repeated that "any objections to the count proposed by the Examiner should have been made by way of request for reconsideration."

Baxter petitioned the Commissioner "to exercise his supervisory authority and instruct the Examiner of Patent Interference to reconsider his decisions ... and to transmit to the Primary Examiner the Baxter et al motions to amend filed October 22, 1962." In denying the petition, the Commissioner stated, in a decision on petition dated February 26, 1965:

> While petitioner considers the redeclared interference as a new interference, the present proceeding is a *reformed* interference, wherein the count has been amended by the Examiner to better define the invention. Closely related circumstances, involving different, but analogous, facts are discussed by Rivise and Caesar in their treatise, *Interference Law and Practice* at Volume Two, Section 363, pages 1414–1420. The ruling case law, as interpreted in said treatise, is to the effect that there is no necessity for setting a new motion period, if the questions could have been disposed of during the original motion period. This is believed to be the proper rule to follow here. In the present case, not only could all of the present motions have been presented, but for all practical purposes, as noted above the Examiner's criticism of the original Baxter et al motion is applicable to each of counts $B_{1-4}$, $C_{1-4}$ and $D_{1-4}$. With regard to counts $E_{1-5}$, it is to be observed that the party Bailey [12] requested a separate interference during the motion period and petitioner could have done the same. Therefore, there is no good reason why the subsequently proposed motions were not proposed and disposed of during the original motion period.

*Board Opinion*

The board sustained the examiner's rejections of claims 1 and 6 under 35 U.S.C.

lent hydrocarbon and consisting of combined metal having each valence satisfied by a member of the group consisting of halogen and monovalent hydrocarbon, and contacting the resulting transition metal product with propylene and ethylene in coordinate molar proportion.

11. *See* note 5 *supra*.

12. See note 5 *supra*.

§ 103 as unpatentable over either Hogan, Field '452, or Field '647. It also sustained the rejection of claim 1 under 35 U.S.C. § 132 for containing new matter,[13] reasoning that the term "crystalline copolymers ... are not within the scope of appellants' teaching [of *partially* crystalline copolymers] and for which no preparative technique has been taught."

The board sustained the rejection of claims 7 and 8 on the ground of interference estoppel,[14] ruling:

> The motion to amend under Rule 233(b) in Interference No. 90,833 involving appellants' parent case, Serial No. 556,548, filed December 30, 1955, in which claims to the invention at bar were first presented was filed belatedly and thus refused consideration. This refusal by the Interference Examiner to submit the motion to the Primary Examiner for consideration was confirmed upon petition to the Assistant Commissioner. Appellants, consequently, are now estopped from again asserting the same invention which they had an opportunity and obligation to contest in the Interference.
>
> The original motion denied by the Primary Examiner by its proposed addition of Count A clearly did not propose to make the presently claimed invention an issue of the interference. Said Count A may possibly be construed as being inclusive of or generic to the presently claimed invention, but manifestly it does not specifically point out and delineate the invention at bar which cannot be said to be an obvious variation within the scope of proposed Count A. Appellants thus having failed to bring into issue all commonly disclosed inventions are now equitably estopped from again presenting claims to an invention whose priority should have been contested in the Interference.

OPINION

*The Product Claims*

■ With respect to claims 1 and 6, the Hogan reference discloses the polymerization of certain olefins in the presence of a chromium oxide catalyst to yield solid polymers including polypropylene, polyethylene, and ethylene-propylene copolymers. Relevant portions of the parent 1953 application disclose polymerization of olefins, including propylene and ethylene, "in the presence of chromium oxide deposited on or intimately admixed with silica, alumina, or silica-alumina supports." Discussion in the 1953 application of unsaturation "found in all of our polymers including copolymers such as ethylene propylene copolymer" is ample suggestion to one of ordinary skill in the art to copolymerize propylene with ethylene in the presence of the disclosed chromium oxide catalysts, even though there is no specific example in the 1953 application directed to preparation of ethylene-propylene copolymer. Accordingly, we hold that there is sufficient disclosure in the 1953 application carried forward to the Hogan patent to have rendered obvious a range of tacky, semi-solid, and solid ethylene-propylene copolymers prepared in the presence of the chromium oxide catalysts, as set forth in claims 1 and 6.

Baxter includes as a limitation in his claims that the copolymers be at least partially crystalline and specifies a particular ethylene-to-propylene ratio. Hogan does not specifically state that his copolymers are partially crystalline, but a specific objective disclosed in the 1953 application was to provide high molecular weight solid polymers. The board found it reasonable to infer that such solid polymers are at least partially crystalline. Baxter presents no factual evidence to the contrary, merely arguing that Hogan's disclosure shows the production of liquid, syrupy, tacky, and

---

13. The board reversed the examiner's rejection of claim 6 under 35 U.S.C. § 132. However, *see In re Rasmussen*, 650 F.2d 1212 (Cust. & Pat. App.1981), wherein the proper basis for a new matter claim rejection is no longer section 132, but rather section 112, first paragraph.

14. The board reversed the examiner's rejection of claims 7 and 8 under 35 U.S.C. § 103 as unpatentable over U.S. Patent No. 3,257,332 to Ziegler et al. in view of certain secondary references, finding the Ziegler et al. patent unavailable as a reference in view of its filing date.

waxy polymers which, according to Baxter, were certainly not crystalline. However, this argument ignores the solid polymers produced by Hogan. We are persuaded that, in the absence of any significance attributed to the ethylene-to-propylene ratio, it would have been obvious to one of ordinary skill in the art that the ratio could be varied depending on the type of copolymer desired.

■ Baxter argues that the Hogan catalysts differ greatly from the catalysts of his invention. However, the claims are directed to the products produced utilizing those catalysts. Baxter takes the position that there is insufficient disclosure in Hogan to make a solid, partially crystalline, essentially linear ethylene-propylene copolymer, but fails to provide any objective evidence to support this assertion. The PTO is not equipped to make the physical comparisons and evaluations urged by Baxter, and it is Baxter's burden to establish that the processes of the cited reference fail to produce the claimed copolymer. *In re Brown*, 59 CCPA 1036, 459 F.2d 531, 173 USPQ 685 (1972). *In re Jacobs*, 50 CCPA 1316, 318 F.2d 743, 137 USPQ 888 (1963).[15]

*The Process Claims*

Process claims 7 and 8, *supra*, were rejected on the ground of interference estop-pel. Baxter does not attack the doctrine of interference estoppel or the reasonableness of the PTO rules regarding motion period practice per se. His arguments are directed solely to the reasonableness of the application of the doctrine under the facts of this case. We are asked only to decide whether the doctrine of interference estoppel properly applies.

A. Claim Interpretation

■ The doctrine of interference estop-pel applies against a party who "has neglected or refused to contest priority of patentable subject matter which is *clearly* common to his application and the application of his opponent in interference," *In re Yale*, 52 CCPA 1668, 1674, 347 F.2d 995, 1001, 146 USPQ 400, 404 (1965).[16] Thus, the question is whether Baxter neglected or refused to contest priority on the copolymerization of propylene.

Of necessity, the answer depends upon the interpretation to be given the original count in '833.[17] Baxter argues that the original count was broad enough to embrace either homopolymerization of propylene or copolymerization of propylene with other monomers such as ethylene and was, therefore, broad enough to embrace the process of claims 7 and 8. During the peri-

---

15. In view of our disposition of the rejection of claims 1 and 6 as unpatentable over Hogan, we do not reach the rejection of those claims as unpatentable over Field '452 or Field '647. Nor do we reach the rejection of claim 1 under 35 U.S.C. § 132 as containing new matter except to note Baxter's argument that "[i]n the polymer art it is universally recognized that 'crystalline' polymers are in fact partially crystalline having regions of crystallinity admixed with amorphous regions" appears to be well taken.

16. Although not argued by the parties, it appears that one prerequisite to application of the doctrine of interference estoppel (estoppels by dissolution, by judgment, by failure to file a motion to amend, and equitable estoppels) is the existence of a prior, final determination on which the estoppel is based. With one known exception, the doctrine has been applied only after a dissolution of or final judgment in a precursor interference. The exception is the case of *Avery v. Chase*, 26 CCPA 823, 101 F.2d 205, 40 USPQ 343 (1939). Not only is *Avery* an exception, but it is factually distinguishable from the case before us. In *Avery* there was no dispute regarding interpretation of count language such as there is here. *See* Rivise and Caesar, *Interference Law and Practice*, 988–89 (1943); Richardson, *Estoppels Arising out of Interference Proceedings in the Patent Office*, 21 JPOS 411, 422–31 (1939). *See* McCrady, *The Legal Basis of the Interference Estoppel Doctrine*, 26 JPOS 798 (1944).

In the present case, an appeal involving '833 is pending before the United States Court of Appeals for the Third Circuit. At oral argument the Solicitor stated that any issue over whether the Commissioner properly refused to add any of the counts proposed by Baxter in his October 22, 1962, motion to amend must await the decision in that interference. Therefore, a prerequisite for application of the doctrine, *viz.*, a prior, final determination concerning the subject matter of the interference, is missing and, thus, estoppel is premature.

17. *See* note 7 *supra*.

od for motions Baxter moved to add count A[18] which, he asserts, would have covered polymerization of ethylene and propylene because, in pertinent part, it recites: "A process for polymerizing propylene to a solid linear polymer which process comprises contacting propylene with a catalyst . . . ." Baxter asserts that only when the examiner, in his decision on motions which followed the motion period, substituted a new count drawn to a "process for homopolymerizing propylene," was the count in interference limited to *exclude* copolymerization.

To determine the scope of the counts, we rely on well-settled rules of count interpretation. In the absence of ambiguity, it is fundamental that the language of a count should be given the broadest reasonable interpretation it will support and should not be given a contrived, artificial, or narrow interpretation which fails to apply the language of the count in its most obvious sense. *Fontijn v. Okamoto*, 518 F.2d 610, 617, 186 USPQ 97, 102–03 (Cust. & Pat.App.1975). Only when counts are ambiguous may resort be had to the application where the counts originated, and this court does not look to the specification to determine whether there is an ambiguity. *Kroekel v. Shah*, 558 F.2d 29, 32, 194 USPQ 544, 547 (Cust. & Pat.App.1977); *Stansbury v. Bond*, 482 F.2d 968, 974–75, 179 USPQ 88, 92–94 (Cust. & Pat.App.1973). Baxter, in his brief, asserts that there is no ambiguity in the language of the count, either patent or latent, arguing that the language of the original count and of count A was broad enough to embrace copolymerization of propylene with other monomers.

Bearing in mind the above considerations and recognizing that Baxter's proposed count A is a comprising-type count,[19] we are satisfied that the scope of the proposed count includes polymerizing propylene with any other monomer (copolymerization), such as ethylene, as well as homopolymerization.[20] As long as one of the monomers in the reaction is propylene, any other monomer may be present, because the term "comprises" permits the *inclusion* of other steps, elements, or materials. If a claim containing the language of proposed count A had been prosecuted and if the examiner had been aware of a prior art reference disclosing the polymerization of propylene with ethylene or any other monomer, it is most unlikely that the examiner would have failed to make a prior art rejection against the claim.

The dissenting opinion treats the original count and proposed count A as though neither were ambiguous. However, its only support, *Robie v. Carlton*, 36 CCPA 739, 171 F.2d 310, 80 USPQ 102 (1948), involved a count that was ambiguous.[21] In *Robie*, the

---

18. *See* note 6 *supra*. If, indeed, there was no dispute regarding count interpretation and Baxter had attempted to introduce a count whose scope covered copolymerization, but was prevented from doing so by the PTO, then, under *Stoudt v. Guggenheim*, 651 F.2d 760 (CCPA 1981) and *In re Frilette*, 58 CCPA 799, 804, 436 F.2d 496, 500, 168 USPQ 368, 371 (1971), the doctrine of interference estoppel may not be applied to reject his claims drawn to that subject matter in this subsequent *ex parte* prosecution.

19. The count does not exclude anything not recited in the count. P. Rosenberg, *Patent Law Fundamentals*, 14–15 (1980); I. Kayton, *Patent Preparation & Prosecution Practice*, 3–2 (1976).

20. This statement applies equally to original count 1 in '833, *supra* note 7. The dissenting view erroneously focuses on the interpretation of the word "propylene" rather than on the interpretation of the entire comprising-type count.

21. Although we agree with the dissenting opinion that Baxter's count language was unambig-

uous, it is the majority's view that the counts include copolymerization, as discussed *supra*. Moreover, Baxter stated in his Motions to Amend of October 22, 1962, that his best evidence of priority is data concerning the polymerization of propylene with ethylene and that his example 1 (and Ziegler's examples 3 and 4) expressly discloses polymerization of ethylene with propylene. That statement was in response to the examiner's *sua sponte* limiting of the interference count to exclude copolymerization because such action "clarifies the issue." Apparently the examiner thought the count was ambiguous (otherwise there was no need to clarify it), and, if so, the proper course of action would have been for him to resort to "the specification of the patent or application from which the language originated to determine its meaning." *Fontijn v. Okamoto*, 518 F.2d at 618, 186 USPQ at 103. Since the applications of both Baxter and Ziegler disclose copolymerization, the examiner would have found copolymerization clearly within the scope of the count.

court analyzed a product count in which the term "comprising" was used twice to define certain classes of materials within other classes of materials, the precise question being whether the class "resin size coating" contained nearly all resin (*i. e.,* consisted essentially of resin) or could also contain a lesser amount. In reaching its decision, the court resorted to the rule that "the language of the count, if it is to be considered ambiguous, must be given a construction which is reasonable in light of the application in which the count originated." *Robie,* 36 CCPA at 741, 171 F.2d at 311–12, 80 USPQ at 103. The court noted, in several specific references to Robie's joint applications, that the applications *limited* the term to essentially all resin, which was the narrow interpretation. In the case before us, as pointed out *supra* note 21, Baxter asserted that his example 1 expressly discloses polymerization of ethylene with propylene and, thus, supports the *broader* interpretation of the count. Apparently the dissenting opinion would interpret Baxter's original count and proposed count A narrowly to mean "polymerizing propylene only with itself" or "contacting only propylene and no other monomer."

The dissenting opinion refers to, but does not follow, *In re Fenton,* 59 CCPA 708, 451 F.2d 640, 171 USPQ 693 (1971), a case in which the claims, like Baxter's counts, were not ambiguous and the term "comprising" was used only once. In *Fenton,* the court held that claims reciting an "oxidation process" were open to the interpretation that oxygen supplied by the atmosphere was the oxidant, although they did not recite the presence of oxygen as a reactant. Under *Fenton,* the original count 1 and Baxter's proposed count A in '833, reciting a "process for polymerizing propylene," are clearly open to the interpretation that another monomer, such as ethylene, may be a reactant, although not expressly recited as a reactant.

### B. Due Process Considerations

The second error of the PTO is in totally ignoring the clear infringement of Baxter's procedural due process rights. As the Supreme Court has repeatedly stated:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978). This court has recently affirmed the "continuing vitality of the doctrine of interference estoppel . . . in appropriate factual settings." *In re Ogiue,* 517 F.2d 1382, 1390, 186 USPQ 227, 234 (Cust. & Pat.App.1975). Such factual settings necessarily include notice and opportunity to be heard.

The examiner's Decision on Motions of September 20, 1962, first put Baxter on notice that the interference would exclude copolymerization. Then, for the first time, Baxter had a meaningful right to contest the examiner's interpretation of the count. Neither the PTO nor the dissenting opinion cites any facts of record from which one could infer that *during the motion period* Baxter was on notice that copolymerization was excluded from the interference.

As related in the BACKGROUND section, *supra,* Baxter's numerous motions to reconsider, to amend, and to declare a separate interference on the copolymerization subject matter were all denied by the PTO. As the court pointed out in *Avery,* 26 CCPA at 832, 101 F.2d at 212, 40 USPQ at 349–50, it has been the practice of the PTO to admit late filed motions to amend interferences "upon a showing of cause for delay in making the motion." Under this practice, it appears that Baxter's Motions to Amend, filed October 22, 1962, *supra,* should have been ruled on so that a separate interference could have been declared between Ziegler and Baxter on the copolymerization subject matter. The fact that the examiner *first* set forth his interpretation of the count in his decision on motions and, then,

unilaterally *changed* the scope of the count was good cause for Baxter's late filing of motions to amend. These motions were in prompt response to the examiner's Decision on Motions of September 20, 1962. The sole reason given by the examiner for excluding copolymerization is his statement that this "clarifies the issue." However, there is no basis in law for denial of patent rights merely because the denial "clarifies the issue." Also, denial of Baxter's subsequent petition and motions on the basis that they could have been made earlier (*i. e.,* during the period for motions) cannot be given effect because Baxter had not been on notice that a motion to include copolymerization was needed until *after* the period for motions had ended.[22]

In view of the foregoing, the rejection of claims 1 and 6 under 35 U.S.C. § 103 as obvious from Hogan is affirmed. The rejection of claims 7 and 8 on the ground of interference estoppel is reversed.

### MODIFIED

BALDWIN, Judge, with whom NIES, J., joins, dissenting-in-part.

I do not agree with the majority on the interpretation to be given the original count in the '833 interference.[1] The language of the count is specific to "polymerizing propylene" and provides a process step "contacting propylene with a catalyst." The term "propylene" is unambiguous and specific to a particular compound. Accordingly, I would interpret the language of the original count to include only the homopolymerization of propylene.

The language of proposed count A[2] essentially differs from the original count only in limitations specifically directed to the catalyst. I would apply a similar analysis to count A and would interpret the language of count A, like that of the original count, to include only the polymerization of propylene.

The original count utilizes the transitional phrase "comprises" in connection with the recited process step, which would indicate that the claimed process is left open to the inclusion of additional process steps which are not recited in the count. *Ex parte Vollheim*, 191 USPQ 407 (P.O.Bd.App. 1975). *Ex parte Schaefer*, 171 USPQ 110 (P.O.Bd.App.1970). However, the recited process step must be given weight. The recited process step is "contacting propylene with a catalyst." There is no "comprising" term used within that step in connection with the specific reactant "propylene." The use of the term "comprises" in connection with the process step does not imply that every element or material that is listed thereafter must be construed to be open. The use of the term "comprises" with the process step and the failure to use it thereafter with the reactant that is contacted with the catalyst would indicate that the reactant "consists essentially of" propylene. *See Robie v. Carlton*, 36 CCPA 739, 171 F.2d 310, 80 USPQ 102 (1948).[3] *But see In re Fenton*, 59 CCPA 708, 451 F.2d 640,

---

**22.** As pointed out by the dissenting opinion, the correctness of the PTO's failure to declare a separate interference between Baxter and Ziegler is not before the court. However, we point out that such a failure should not be elevated to a *sub silentio* excuse for denying Baxter patent rights to which he otherwise is entitled; nor does it excuse the PTO's failure to declare a separate interference under 35 U.S.C. § 135 between Baxter and Ziegler. Had such interference been declared, the "troublesome, expensive, and sometimes vexatious" delays (quoting from the dissenting opinion) by the PTO's activities would have been avoided or minimized. It appears that improper application of the rule here has *caused* rather than

avoided such delays. Baxter has consistently maintained that an interference involving the copolymerization process of claims 7 and 8 is the proper remedy for the current status of the copolymerization subject matter.

**1.** Supra n.7 of the majority opinion.

**2.** Supra n.6 of the majority opinion.

**3.** The analysis of *Robie* provided by the majority is both irrelevant and incorrect. *Robie* is cited to support the proposition that attention must be paid to how the term "comprising" is used in a count, i. e., to what it applies whether or not there is any ambiguity in the language of

171 USPQ 693 (1971) where "comprising" claims which did not recite the presence of oxygen in the reaction medium were held open to the interpretation that oxygen supplied by the atmosphere was the oxidant. There, however, the claim preamble did recite "an oxidation process." [4]

In his brief, Baxter predicates his argument on his conclusion that the language of the original count, and of count A, "was obviously broad enough to embrace either homopolymerization of propylene or copolymerization of propylene with other monomers such as ethylene as described in both the Ziegler and Baxter applications and in claims 7 and 8." Under well-settled rules of count interpretation, it is the language of the count that we must interpret and only in the case where a count is ambiguous should resort be had to the application where the count originated. The court does not look to the specification to determine if there is an ambiguity, let alone to resolve the meaning of the count for purposes of an interference. To consult the specification where the count originated, there must be either an apparent ambiguity in the language of the count or the arguments of one or more of the parties must make it clear that the language of the count may have different meanings. *Kroekel v. Shah*, 558 F.2d 29, 194 USPQ 544 (Cust. & Pat.App. 1977); *Stansbury v. Bond*, 482 F.2d 968, 179 USPQ 88 (CCPA 1973). Baxter, in his brief, asserts no ambiguity in the language of the count, either patent or latent, arguing only his conclusion that the language of

the original count and of count A was broad enough to embrace copolymerization of propylene with other monomers.

The majority asserts that the PTO erred "in totally ignoring the clear infringement of Baxter's procedural due process rights." This argument is somewhat superfluous in view of the fact that whether or not there is such violation of due process flows from the interpretation to be given the counts in issue. If the counts are interpreted to include copolymerization, then Baxter has certainly suffered some loss of rights. If, however, the counts are interpreted to exclude copolymerization, then well-settled principles of the doctrine of interference estoppel come into play.

The rule of law set out by this court in *Avery v. Chase*, 26 CCPA 823, 101 F.2d 205, 40 USPQ 343, *cert. denied*, 307 U.S. 638, 59 S.Ct. 1036, 83 L.Ed. 1519 (1939), is that a party to an interference has a duty to present all claims involving common subject matter with any of the other parties in the proceeding, and that failure to timely present these claims estops him from presenting them at a later time before the PTO.[5] The development of this doctrine of interference estoppel has not been restricted to the application of res judicata. The opinion of this court in *Avery* gives weight to procedural considerations of the rules of the PTO which provide a motion period during which a party has the opportunity to put forward every claim he has to subject matter common to any of the involved applications.[6] The need for enforcement of

the count. Contrary to the analysis of the majority, the court in *Robie* did not find that the count was ambiguous. The court based its conclusion on its interpretation of the clear language of the count. The dictum to which the majority refers, "if it (the language of the count) be considered ambiguous," was in response to argument by counsel that the count must be broadly construed.

4. While it is reasonable to infer that "an oxidation process" necessarily involves the combination of oxygen with some substance, it does not follow that a "process for polymerizing propylene" necessarily involves the inclusion of ethylene in the reactant mixture.

5. The majority cites *Avery* as an "exception," supra n.16 of the majority opinion, and argues that a prerequisite to application of the doctrine of interference estoppel is a prior final determination. This ignores the precedential value of *Avery* where this court specifically assumed that a prior interference had not been terminated. Baxter does not raise this issue.

6. 37 CFR 1.231, revised as of January 1, 1960, provided for a motion period "within which the various motions specified in §§ 1.232 to 1.236 may be brought by the parties."

37 CFR 1.233(a) provided in part:

Motions may be brought to amend the interference to put in issue any claims which

this rule is stressed to avoid excessive delays and continued litigation that can be troublesome, expensive, and sometimes vexatious.[7] The court in *Avery* cites authority supporting this court's belief in the validity of the PTO rules regarding motions to put such claims in issue and the reasonableness of the application of interference estoppel under the facts which the cases then before us presented. *Accord, Meitzner v. Mindick*, 549 F.2d 775, 193 USPQ 17 (CCPA 1977).

The court in *Avery*, at 829, 101 F.2d at 210, 40 USPQ at 347–348, stated:

> [T]his rule works no hardship to him who is diligent in pursuit of his rights. When an interference is declared, the files of his contestants are open to him. He has full cognizance of their disclosures and claims. So advised, it becomes his duty to put forward every claim he has. Rule 109 [8] affords him this opportunity. If the rule be not enforced or enforceable, then delays and litigation are greatly increased. It is quite obvious that the doctrine of estoppel, as applied in these cases, results in the better conduct of the business of the Patent Office and in the public good.

The majority wrongly relies on Baxter's "numerous motions to reconsider, to amend, and to declare a separate interference on the copolymerization subject matter," all actions taken *after* the expiration of the motion period. It is somewhat incongruous that this court in *Avery* and *Meitzner* provides support for the need for enforcement of the rules relating to motion periods, yet in this instance, upon consideration of actions taken *after* the expiration of the motion period, decides that enforcement of the rule violates procedural due process rights.

should be made the basis of interference between the moving party and any other party.

7. In line with these considerations, the decision denying the motion to add proposed count A was made more than 18 years ago on September 20, 1962, as noted in the majority opinion. Further, I note that Baxter has brought to our attention that the PTO issued U.S. Patent No. 3,833,551 ('551) to Ziegler et al. covering the subject matter of claims 7 and 8. The question of validity of that patent is not before us, but Baxter questions why the PTO could not have

Accordingly, I would affirm the rejection of claims 7 and 8 on the ground of interference estoppel.

set up the separate interference on this invention between Ziegler and Baxter without the inequity of treating one of two parties preferentially and applying interference estoppel against the other. I would not attempt to answer this question on the record before this court. However, the portion of the term of the '551 patent subsequent to December 3, 1980, has been disclaimed.

8. Pertinent portions of then-Rule 109 are in substance incorporated in 37 CFR 1.231.