NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

(Reexamination No. 90/007,802)

**IN RE SP CONTROLS, INC.**

_____

2011-1119

_____

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences

_____

Decided: December 21, 2011

_____

MICHAEL E. DERGOSITS, Dergosits & Noah, LLP, of San Francisco, California, argued for appellant.

ROBERT J. MCMANUS, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were, RAYMOND T. CHEN, Solicitor and WILLIAM LAMARCA, Associate Solicitor.

_____

Before PROST, SCHALL, and MOORE, *Circuit Judges.*

SCHALL, *Circuit Judge*.

## DECISION

SP Controls, Inc. ("SP Controls") appeals the August 18, 2009 decision of the Board of Patent Appeals and Interferences ("Board") affirming the Examiner's rejection of all claims of SP Controls' U.S. Patent No. 6,137,794 ("'794 patent") in an *ex parte* reexamination proceeding. *Ex parte SP Controls, Inc.*, No. 2009-6008, 2009 WL 2573973 (B.P.A.I. Aug. 18, 2009) ("*Board Decision*"). We *affirm*.

## DISCUSSION

## I.

The '794 patent is directed to an apparatus for controlling the input to another device. For example, one of the preferred embodiments describes a device for controlling the input to an audio-visual projector. '794 patent col.2, ll.32-46. The patent has one independent claim and five dependent claims. Independent claim 1 recites:

A device control apparatus capable of controlling connection of any selected one of at least two input devices to a controllable device, said apparatus comprising:

input device selection keys, each of the selection keys corresponding to one of the input devices;

control circuitry coupled to the input device selection keys, configured to be coupled to switching circuitry, and configured to assert a different input device selection signal to the switching circuitry in response to actuation of each of the selection keys to cause the switching circuitry to connect the controllable de-

vice to a corresponding one of the input devices;

a set of light sources, including a controllable light source for each of the input device selection keys;

a frame to which the control circuitry and the keys are mounted, wherein the frame has slots extending through said frame for receiving labels, and each of the slots is positioned between one of the light sources and one of the input device selection keys; and

labels mounted over the slots, each of said labels comprising transparent material marked with a legend identifying one of the input devices.

'794 patent col.9, l.13-col.10, l.6.

On November 9, 2005, RGB Systems, Inc., dba Extron Electronics, filed with the Patent and Trademark Office ("PTO") a request for *ex parte* reexamination of the '794 patent. The PTO granted the request, and on October 1, 2007, the Examiner rejected claims 1 and 4-6 of the patent as obvious over Sony PC 1270 Switcher Service Manual ("Sony") in view of Extron System 8/10 Manual ("Extron"). Reexamination No. 90/007,802, Rejection at 2-4 (Oct. 1, 2007). The Examiner rejected claims 2 and 3 of the patent as obvious over Sony in view of Extron and further in view of U.S. Patent No. 4,683,360 ("'360 patent"). *Id.* at 5. SP Controls appealed to the Board, which affirmed the Examiner's rejection. *Board Decision.* After the Board denied rehearing, *Ex parte SP Controls, Inc.*, No. 2009-6008, 2010 WL 3448889 (B.P.A.I. Aug. 31, 2010), SP Controls appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4).

## II.

This case turns wholly on claim construction. That is because SP Controls concedes that if the Examiner's construction of two disputed limitations of claim 1 of the '794 patent stands, the prior art references render the patent's claims obvious.

Giving claim 1 what he determined to be its broadest reasonable construction, the Examiner construed the limitation "a frame to which the control circuitry and keys are mounted, wherein the frame has slots extending through said frame for receiving labels," as not requiring a frame with separate slots for labels and keys. Reexamination No. 90/007,802, Rejection at 8, 11 (Oct. 1, 2007) ("*Rejection*"). Likewise, the Examiner construed the limitation "labels mounted over the slots" as covering structure in which a label covers a key "under a transparent cover of the key top, with the key mounted through the slot, thereby placing the label 'over the slot.'" Reexamination No. 90/007,802, Examiner's Answer at 24 (Aug. 29, 2008). Based upon his claim construction, the Examiner concluded that the Sony and Extron references rendered claims 1 and 4-6 of the '794 patent obvious and that the Sony and Extron references in combination with the '360 patent rendered claims 2 and 3 obvious. *Rejection* at 2-5. Agreeing with the Examiner's construction of the disputed limitations, the Board affirmed the rejection of the '794 patent's six claims. *Board Decision*.

## III.

SP Controls argues that the Examiner's construction of "slots . . . for receiving labels" was unreasonably broad. In making this argument, it focuses on the '794 patent's specification. It points out that, in the specification, there is no written description reflecting the Examiner's construction that the claims do not require separate slots for

labels and keys.  Pet'r's Br. 17.  It also points out that, in fact, the specification uniformly shows labels and keys occupying separate slots.  *Id.* at 18-22. Thus, SP Controls contends, the specification teaches that the claimed slots are used for receiving labels only.  *Id.* at 23.  SP Controls also contends that the specification teaches that the claimed labels are transparent and the keys opaque; thus the labels would not be backlit if keys were inserted into the slots as well.  *Id.* at 17-18.

SP Controls argues as well that the Examiner gave an unreasonably broad construction to the limitation "labels mounted over the slots."  It urges that the correct construction of this limitation supports its argument that, in the claimed invention, labels and keys must occupy separate slots.  *Id.* at 24.  According to SP Controls, it was error for the Examiner to construe this limitation as allowing a label to cover a key with the key mounted through the slot, thereby allowing labels to occupy the same slots.  *Id.* at 28.  SP Controls contends that the only reasonable construction of the limitation "labels mounted over the slots" is "labels mounted so as to cover the slots." *Id.* at 24.  This construction, it claims, results in a structure in which labels and keys are in separate slots.  *Id.* The reason is that a label "mounted so as to cover a slot" cannot do so if the slot also has a key extending from it. In other words, when the limitation is construed in this manner, "there is no room in the slot to receive other objects such as keys." *Id.*

The PTO responds that the terms "slots . . . for receiving labels" and "labels mounted over the slots" can reasonably be construed so as to allow the slots to receive both labels and keys.  The PTO argues that claim 1 does not contain any language limiting the slots to only receiving labels or requiring that labels "cover" slots.  Resp't's Br. 24-27.  It also argues that the word "between" in the

limitation "each of the slots . . . positioned between one of the light sources and one of the input device selection keys" supports the proposition that the keys also can be in the "slots . . . for receiving labels." *Id.* at 17-18. The PTO contends that the claim construction urged by SP Controls improperly attempts to narrow claims to preferred embodiments in the specification. *Id.* at 19-30.

IV.

We review the Board's claim construction *de novo. In re NTP, Inc.*, 654 F.3d 1268, 1274 (Fed. Cir. 2011) (quoting *In re Baker Hughes, Inc.*, 215 F.3d 1297, 1301 (Fed. Cir. 2000)). During reexamination, the PTO must give claims their broadest reasonable construction consistent with the specification. *In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007). We "thus review[ ] the PTO's interpretation of disputed claim language to determine whether it is 'reasonable.'" *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1259 (Fed. Cir. 2010) (quoting *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997)).

We turn first to the claims themselves, in order to determine whether there is anything in their language which limits their reach to a frame in which labels and keys are in separate slots. *See Rapoport v. Dement*, 254 F.3d 1053, 1059 (Fed. Cir. 2001). Doing so, we find no such limitation. Moreover, claim 1 claims "[a] device control apparatus . . . comprising" enumerated components. '794 patent col.9, ll.13-15. "'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim." *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) (quoting *In re Baxter*, 656 F.2d 679, 686 (CCPA 1981)). Claim 1 recites "slots extending through said frame for receiving labels" and "labels mounted over

the slots." '794 patent col.9, l.29–col.10, l.6.  Thus, while "slots . . . for receiving labels" and "labels mounted over the slots" are essential claim elements, claim 1's open-ended "comprising" language on its face does not bar other elements (*i.e.*, keys) from being placed in the slots. Indeed, we think the claim language "each of the slots is positioned between one of the light sources and one of the input device selection keys," *id.* col.10, ll.1-3, allows just such structure, because it suggests a linear physical arrangement in which there is a light source and then a slot containing first a key and second a label.

Neither do we find language in the specification limiting the claims to frames with separate slots for labels and keys.  *See, e.g.*, *Rapoport*, 254 F. 3d. at 1059-60 (pointing to a portion of the written description explicitly defining a particular claim term).  While it is true that the embodiments described in the '794 patent's specification all disclose structure in which keys and labels are in separate slots, *see* '794 patent col.3, ll.58-60; col.5, ll.3-5, 27-30, 57-61, there is no language in the specification affirmatively limiting the claims to such embodiments, including such embodiments with opaque keys.  This is significant, for the law is clear that, absent such language in the specification, the claims are not limited to preferred embodiments.  *See Resonate, Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1367 (Fed. Cir. 2003); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326-28 (Fed. Cir. 2002).  This is particularly so where, as here, the claims are to be given their broadest reasonable construction.  *Cf. In re Bigio*, 381 F.3d 1320, 1324-25 (Fed. Cir. 2004) (cautioning against reading limitations into the claim from the specification when applying the broadest reasonable construction).  In short, because the language of claim 1 itself is not limited to frames with separate slots for labels and keys, and because the specification does not impose such a

limitation, the Examiner did not err in the construction he gave to the limitation "slots for receiving labels."

Finally, we are not persuaded by SP Controls' arguments relating to the limitation "labels mounted over the slots." Again, starting with the claims themselves and noting the open-ended "comprising" language in the preamble, we see nothing in the language of claim 1 which bars the Examiner's construction that the limitation embraces structure in which labels cover keys mounted through slots. The same is true of the specification. Nothing in it limits "labels mounted over the slots" to structure in which labels cover slots. Thus, the Examiner also did not err in the construction he gave this limitation.

## V.

For the foregoing reasons, we affirm the Board's decision sustaining the Examiner's rejection of claims 1-6 of the '794 patent.

Each party shall bear its own costs.

**AFFIRMED**